AUSA LIFE INSURANCE COMPANY, et al., Plaintiffs,

v.

Andrew T. DWYER, et al., Defendants.

No. 93 Civ. 6830 (WCC).

United States District Court, S.D. New York.

Sept. 27, 1995.

Cadwalader, Wickersham & Taft, New York City, for Plaintiffs (except the New York Life Plaintiffs); Edwin David Robertson, of counsel.

Pollack & Kaminsky, New York City, for Plaintiffs New York Life Insurance Company and New York Life and Annuity Corporation; Daniel A. Pollack, Martin I. Kaminsky, of counsel.

Shereff, Friedman, Hoffman & Goodman, LLP, New York City, for Defendant Joseph A. Gallo; Andrew J. Levander, Shari L. Steinberg, Joseph I. Fontak, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

The above-captioned case is one of twenty-two related securities actions filed following the collapse of JWP Inc. ("JWP"). This action was filed on September 30, 1993, by thirteen insurance companies who had invested in JWP's debt securities between December 1988 and March 1992. Generally speaking, the complaint alleges that JWP's financial statements contained material misstatements and that plaintiffs' investments in JWP were fraudulently induced. The defendants include JWP's former Chairman and President, its former Chief Financial Officer, members of its Audit Committee, and its Treasurer, Joseph Gallo.

The parties dispute the extent of defendant Gallo's involvement in the events described in the complaint. Plaintiffs allege, *inter alia*, that Gallo was deeply embroiled in the fraudulent activities at JWP and had access to non-public information that gave him actual knowledge of fraudulent state-

ments in JWP's financials. Gallo counters that he was not at all involved in the preparation of JWP's financial statements and was unaware of any illegal activity. The parties agree, however, that between November 1991 and August 1992, Gallo signed several certificates stating that, to the best of his knowledge, JWP was in compliance with its loan obligations for the relevant calendar quarters.

Gallo has submitted, pursuant to Fed. R.Civ.P. 26(a)(2)(B), an expert report prepared by John C. Coffee, Jr., a professor of securities and corporate law. Coffee's report opines that: (1) in signing the no-default certificates that Gallo executed on behalf of JWP, he could reasonably rely on the company's audited financial statements, JWP's officers and directors, the existence of an audit committee, and the advice of counsel; (2) Gallo's reliance appears to have been reasonable and in good faith because of, *inter alia*, his lack of involvement in preparing financial statements and JWP's lack of prior reporting problems; (3) Gallo's relationship to plaintiffs did not approach the close relationship necessary under New York law to ground liability for negligent misrepresentation; (4) the relationship between JWP and plaintiffs was not a fiduciary relationship; (5) under the circumstances, the certificate signed by Gallo on August 26, 1992, was unlikely to have been a proximate cause of plaintiffs' losses; (6) Gallo's statements in the certificates were not made "in connection with the sale or purchase of any security" and therefore are not actionable under Rule 10b–5; and (7) there is insufficient evidence to support a claim that Gallo is a "controlling person" under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, or Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t. *See* Report of John C. Coffee, Jr., at ¶¶ F1,F2,F5–F9. Coffee also explains the nature and significance of the type of certificates signed by Gallo and differentiates them from another type of certificate that could have been used. He opines that Gallo's actions in this regard were reasonable, and neither reckless nor negligent. *See* Coffee Report, at ¶¶ F3,F4.

Gallo has also submitted an expert report prepared by Sally L. Hoffman, a Certified Public Accountant, that explains the role of the treasurer in a typical large, multi-national corporation like JWP. She asserts that the financial management and financial reporting functions are often entirely separate, and opines that, based on her review of the documents provided to her, Gallo was not involved in preparing or auditing JWP's financial statements. *See* Report of Sally L. Hoffman, at 2–4. She also concludes that it was reasonable for Gallo to rely on financial information prepared by others in signing the no-default certificates. *See id.*, at 4. Furthermore, she opines that there was no apparent why reason Gallo would or should have been aware that JWP's financial statements were materially incorrect and were not prepared in accordance with Generally Accepted Accounting Principles. *See id.*, at 4–5.

Plaintiffs have moved, pursuant to Fed. R.Evid. 403, 702, and 704 and our Individual Rules, to preclude Coffee's report on the grounds that it exceeds the permissible scope of expert testimony by offering legal conclusions, rests on facts withheld from plaintiffs during discovery or otherwise lacks sufficient foundation, and duplicates the testimony that will be offered by Hoffman. For the reasons set forth below, we deny plaintiffs' motion, but caution defendant Gallo that we may exclude at trial any portion of Coffee's testimony that we find inadmissible.

## DISCUSSION

Initially, we note that the validity of plaintiffs' objections to much of the challenged expert testimony will become apparent only at trial, when the evidence is presented in context. *See, e.g., Church of Scientology, Inc. v. Eli Lilly & Co.*, Civ. No. 92–1892, at 1,13 (D.D.C. June 8, 1994) (Sporkin, J.) (reserving ruling on numerous evidentiary matters, including admissibility of testimony by Coffee on fiduciary duties of corporate officers); *cf. United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir.) (upholding district court's denial of pre-trial motion *in limine* that sought advisory ruling "assuring that the attorney-client privilege would not be

waived regardless of what developed in [defendant's] direct testimony"), *cert. denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). At this preliminary stage, we are reluctant to rule on the admissibility of each item in Professor Coffee's report. The parties have not yet completed expert depositions, much less trial preparation. Furthermore, this case is only one piece of a complex, multi-party, multi-action securities litigation. It is simply impossible to foresee at this point what testimony the parties will actually seek to introduce at trial or in what context it will be presented. Especially in litigation as complicated as this, we are hesitant to rule in advance, and in the abstract, on the admissibility of particular pieces of evidence. Accordingly, we deny plaintiffs' motion to preclude Coffee's expert report. Nevertheless, plaintiffs have raised objections to portions of Coffee's report that are sufficiently cogent to persuade us that some general comments on the scope of permissible expert testimony may facilitate the parties' preparation for trial by preventing counsel from wasting time and money developing testimony that is likely to be ruled inadmissible. *See Church of Scientology,* No. Civ. 92–1892, at 1.

▪ Generally, expert testimony is admissible if it is helpful to the trier of fact. *See* Fed.R.Evid. 702. The Second Circuit has observed that "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." *Bilzerian,* 926 F.2d at 1294. The use of expert testimony, however, "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts

before it." *Bilzerian,* 926 F.2d at 1294; *see also United States v. Duncan,* 42 F.3d 97, 101 (2d Cir.1994). Accordingly, although an expert may give his opinion on an issue of fact that the jury will eventually decide,[1] "he may not give testimony stating ultimate legal conclusions based on those facts." [2] *Bilzerian,* 926 F.2d at 1294.

The parties' memoranda cite numerous cases that apply this rule. However, the distinction between permissible fact-based conclusions and impermissible ultimate legal conclusions is often a fine one, highly dependent upon the circumstances of the case. We commend to the parties the Second Circuit's decision in *Bilzerian,* which contains perhaps the most useful delineation, for our purposes, of the boundary between permissible and impermissible expert testimony. In that case, defendant Bilzerian had been charged with criminal violations of the securities laws, including making false statements on a Schedule 13D filing. Defendant argued that he had filled out the form in good faith, believing that the funds he used in the securities transaction in question were properly considered "personal funds" whose source he was not required to disclose. The trial court permitted Coffee to testify concerning "general background on federal securities regulation and the filing requirements of Schedule 13D. . . ." *Bilzerian,* 926 F.2d at 1294. Coffee was also permitted to clarify for the jury ambiguities in the instructions on the form, in conjunction with a limiting instruction from the trial judge stating that his testimony was for background purposes only. *See id.,* at 1295. The Second Circuit upheld the trial judge's decision to admit this testimony, noting that Coffee did not give an opinion as

---

1. Fed.R.Evid. 704 abolished the rule against expert testimony on ultimate issues of fact. Nevertheless, "Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions." *United States v. Scop,* 846 F.2d 135, 139 (2d Cir.), *modified on other grounds,* 856 F.2d 5 (2d Cir.1988). As the Advisory Committee Note to Rule 704 states, "opinions which would merely tell the jury what result to reach" are inadmissible.

2. Moreover, the Second Circuit has shown itself to be especially concerned with testimony that

tracks the language of particular statutes or legal standards. *See Scop,* 846 F.2d at 140 (reversing conviction on criminal securities counts where expert witness "drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud'"); *see also Hygh v. Jacobs,* 961 F.2d 359, 364 (2d Cir.1992) (expert witness in suit under 42 U.S.C. § 1983 testified that force used by police officer was not "justified under the circumstances" and "totally improper").

to whether Bilzerian violated the securities laws. *See id.,* at 1294–95.

By contrast, the Second Circuit also upheld the trial judge's decision to exclude the testimony of Lee B. Spencer, Jr., another of the defendant's experts. Spencer would have testified that the term "personal funds" was generally understood in the industry to include the type of funds defendant used to make the purchase in question. The trial judge ruled that this testimony related directly to the issue of whether Bilzerian's Schedule 13D disclosures complied with the requirements of the securities laws. The Second Circuit explained that, as such, Spencer's testimony would have amounted to an "impermissible instruction on governing law." *Id.,* at 1295.

■ Following these guidelines, we believe that significant portions of Coffee's report are likely to be found inadmissible if Gallo seeks to introduce that testimony at trial. For instance, it is hard to imagine expert opinions that more clearly usurp the function of the trial judge in instructing the jury on the law applicable to the case than Coffee's assertions that Gallo was not a controlling person of JWP within the meaning of Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934, *see* Coffee Report, at ¶ F9, and that the statements made by Gallo in the certificates he signed are not actionable under Rule 10b–5, *see id.,* at ¶ F8. On the other hand, it seems equally likely that background information provided by Coffee concerning the relationship of large, multi-national companies to the institutional investors that buy their debt, and explaining the documents those parties customarily exchange, would be quite helpful to a jury that is unlikely to have much knowledge of such sophisticated financial transactions.[3] Testimony of this sort would be anal-ogous to the information Coffee was permitted to provide in *Bilzerian.*

We reiterate that these comments on the scope of permissible expert testimony are merely intended for the guidance of counsel and are not final rulings on the admissibility of any of the testimony in Coffee's report. We will rule on particular portions of his testimony if and when defendant Gallo seeks to introduce them at trial. We will also consider any limiting instructions that may ·be appropriate to ensure that the jury will look to the court, and not to Coffee or any other expert, for an explanation of the law governing this case.

■ Plaintiffs also challenge Coffee's report on the ground that it duplicates portions of Hoffman's report. Our Individual Rules state that we will permit each side to put on only one expert witness in any particular area of expertise. This requirement is designed to eliminate duplicative testimony and to avoid giving an advantage to the side that can afford the most expert witnesses. *See* Fed.R.Evid. 403 (trial court may exclude relevant evidence that is cumulative or waste of time). We see very little overlap between Hoffman's and Coffee's reports, however. Hoffman's report is focused almost exclusively on the role of a treasurer in a large, multinational corporation like JWP. That information provides the basis for her opinion that Gallo was not involved in preparing JWP's financial statements. Coffee's report assumes that lack of involvement and focuses on the significance of the no-default certificates that Gallo signed and, perhaps impermissibly so, on the implications of Gallo's non-involvement on his position under the laws governing securities fraud. Therefore, we see no need to preclude Coffee's report on the ground of duplication.[4]

Plaintiffs advance a third argument in favor of excluding Coffee's conclusion that Gal-

---

**3.** At this point, Coffee's report only touches on these issues. *Compare* Coffee Report, at ¶¶ F3,F4 *with* Affidavit of John C. Coffee, Jr., dated Aug. 18, 1995, at ¶ 10. We will, however, permit Coffee to supplement his report in this area, if done promptly after the issuance of this order. Because Coffee has not yet been deposed, this ruling should pose no great hardship for plaintiffs.

If plaintiffs wish to supplement the report of one of their expert witnesses in response, or to name a rebuttal expert on this issue, they may.

**4.** One clear area of overlap does appear in the reports. Both Hoffman and Coffee conclude that Gallo behaved reasonably in relying on financial information prepared by others when he signed the no-default certificates. *See* Coffee Report, at ¶ F1; Hoffman Report, at 4. To the extent that defendant Gallo attempts to introduce at trial

lo could reasonably rely on the advice of counsel in signing the no-default certificates. Plaintiffs argue that Coffee may not express an opinion on that issue because Gallo has refused to disclose to plaintiffs his communications with counsel and Gallo's expert witness may not rely on information Gallo has withheld from plaintiffs. Gallo counters that he did not reveal any privileged information to Coffee and that Coffee's opinion is based merely on the fact that Gallo conferred with counsel before signing the certificates, which he has admitted to plaintiffs. Plaintiffs argue that if that is the case, Coffee's opinion should be excluded because it lacks a sufficient foundation.

We agree with Gallo that striking this portion of Coffee's expert report would be premature. At Coffee's deposition, plaintiffs may explore the basis for this, or any other, aspect of his opinion. If plaintiffs then believe that any portion of Coffee's opinion testimony proffered at trial lacks a sufficient foundation, they may object to its introduction and we may then rule more advisedly on its admissibility.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to strike the expert report of John C. Coffee, Jr. is denied.

otherwise admissible testimony on this point by both Hoffman and Coffee, we will exclude any duplicative testimony. We agree with Gallo, however, that this one area of duplication is insufficient to justify precluding Coffee's entire report.