TC SYSTEMS INCORPORATED; and Teleport Communications–New York, Plaintiffs,

v.

TOWN OF COLONIE, NEW YORK, Defendant.

No. 00CV1972FJSRFT.

United States District Court, N.D. New York.

July 19, 2002.

Whitman, Osterman & Hanna, Albany, NY (Neil L. Levine, of counsel), Cole, Raywid & Braverman, LLP, Washington, DC (Robert G. Scott, Jr., of counsel), for plaintiffs.

Office of the Town Attorney, Town of Colonie, Newtonville, NY (Danielle Demers, of counsel), Miller & Van Eaton, PLLC, Washington, DC (William Malone, Matthew C. Ames, of counsel), for defendant.

### MEMORANDUM–DECISION AND ORDER

TREECE, United States Magistrate Judge.

Presently pending are three motions pursuant to Fed.R.Civ.P. 7(b) and Fed.

R.Evid. 104(a) and 702. Plaintiffs' move to exclude the expert testimony of Dennis J. O'Donnell, Ph.D and Leonard Krumm. Docket Nos. 41, 42, 47, 48, 50 & 63. Defendant Town of Colonie ("Colonie" or "Defendant") opposes both motions. Docket Nos. 44, 45, 57–59. Also pending is Colonie's motion to preclude the expert testimony of Patricia Kravtin. Docket Nos. 52, 53, 65 & 66. Plaintiffs oppose the motion. Docket Nos. 60 & 61. Oral argument was heard on July 11, 2002, in Room 309 of the James T. Foley U.S. Courthouse in Albany, New York. Decision was reserved. For the reasons that follow, Plaintiffs' motion to exclude the testimony of O'Donnell and Krumm is denied and Colonie's motion to exclude the testimony of Kravtin is granted in part and denied in part.

### I. Background

Plaintiffs are providers of telephone and telecommunications services and are authorized by the New York Public Service Commission to provide such services throughout New York State. *See* First Am Compl. (Docket No. 41, Ex. 1), ¶¶ 1 & 2; Levine Aff. (Docket No. 17), Ex. 3. Plaintiffs brought this action in December 2000, alleging that Colonie's Local Law No. 13 of 1999 ("Local Law No. 13") violates state and federal law. Specifically, Plaintiffs assert, *inter alia*, that Local Law No. 13's requirement that Plaintiffs pay Colonie five percent of their annual gross revenue for use of public rights of way violates the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 [1] and Section 99 of the New York Public Service Law. Colonie has filed a counterclaim alleging that plaintiff TC Systems Incorporated ("TC Systems") has violated Local Law No. 13 and Section 27 of the New York Transportation Corporations Law. A motion to dismiss the counterclaims is currently pending. *See* Docket No. 17.

### II. Discussion

Fed.R.Evid. 702 governs the admissibility of expert testimony and provides that [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Thus, the two basic prerequisites of Rule 702 are: 1) that the witness be qualified as an expert in scientific, technical or specialized matters, *see Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir.1997); and 2) the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *See United States v. 31–33 York Street*, 930 F.2d 139, 141 (2d Cir.1991).

Moreover, district courts are vested with the role of "gatekeeper," which "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Finally, the burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *Id.* at 592, 113 S.Ct. 2786. Nonetheless, the admissi-

---

**1.** The Telecommunications Act was established "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid development of new telecommunications technologies." Pub.L. No. 104–104, 110 Stat. 56, 56. The Act states in pertinent part that "[n]o state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).

bility of expert testimony should be viewed within the context of the entire rules of evidence and the presumption of admissibility of evidence. *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995). Indeed, "[d]oubts about the usefulness of an expert's testimony should be resolved in favor of admissibility." *Marmol v. Biro Mfg. Co.*, No. 93 CV 2659, 1997 WL 88854, at *4 (E.D.N.Y. Feb.24, 1997).

With these standards in mind, the Court turns to each of the proposed expert witnesses.

### B.   Dennis J. O'Donnell, Ph.D

Colonie identified as an expert witness, Dennis J. O'Donnell, Ph.D ("O'Donnell"). *See* Thompson Aff. (Docket No. 41), Ex. 3. Colonie states that O'Donnell's testimony "is offered on the general question of whether a gross revenues fee is an economically sound method of seeking compensation for use of common or joint use property." Def. Mem. of Law (Docket No. 45), p. 7. Plaintiffs move to preclude O'Donnell's testimony on the grounds that O'Donnell is not qualified as an expert and his testimony is irrelevant and unreliable. Plaintiffs also raise for the first time in their reply papers that O'Donnell's testimony would result in delay, a waste of time and prejudice.

### 1.   Qualifications

■  Fed.R.Evid. 702 permits opinion testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education." The Second Circuit and courts within this circuit have liberally construed expert qualification requirements. *See United States v. Brown*, 776 F.2d 397, 400 (2d Cir.1985) (qualification requirements of Rule 702 "must be read in light of the liberalizing purpose of the rule"); *Canino v. HRP, Inc.*, 105 F.Supp.2d 21, 27 (N.D.N.Y.2000) (Hurd, J.) ("liberality and flexibility in evaluating qualifications should be the rule"); *Zwil-*

*linger v. Garfield Slope Housing Corp.*, No. CV 94–4009, 1998 WL 623589, at *7 (E.D.N.Y. Aug.17, 1998) (trial judge has broad discretion in determining whether expert witness is qualified). To determine whether a witness is qualified to render an expert opinion, the court must first ascertain whether the proffered expert has the educational background or training in a relevant field. Then the court " 'should further compare the expert's area of expertise with the particular opinion the expert seeks to offer [and permit t]he expert . . . to testify only if the expert's particular expertise . . . enables the expert to give an opinion that is capable of assisting the trier of fact.' " *Zwillinger*, 1998 WL 623589, at *7 (quoting Federal Judiciary Center, Reference Manual on Scientific Evidence 55–56 (1994) (alterations in original)).

Here, Plaintiffs move to preclude O'Donnell's testimony on the ground that he is not qualified as an expert concerning compensation for use of public rights-of-way or the telecommunications industry. Plaintiffs' argument focuses mainly on O'Donnell's curriculum vitae. Specifically, Plaintiffs argue that O'Donnell's curriculum vitae demonstrates expertise in United States–Asian economic relations and issues involving the emerging Asian markets. Indeed, O'Donnell's current research involves "Sino–American Negotiation and Conflict Management (SANCoM) Project" and "Asian Studies/Liberal Studies Integration Project." *See* Docket No. 41, Ex. 4.

Nonetheless, "lack of extensive practical experience directly on point does not necessarily preclude [an] expert from testifying." *Valentin v. New York City*, No. 94 CV 3911, 1997 WL 33323099, at *15 (E.D.N.Y. Sept.9, 1997). A formal education in a particular field is sufficient to qualify a witness as an expert. *See id.*

(collecting cases). While O'Donnell's curriculum vitae does not demonstrate any practical experience concerning compensation for use of public rights-of-way or the telecommunications industry, O'Donnell does have a doctorate in economics and has taught courses in antitrust and regulation as well as urban and regional planning. *See* Docket No. 41, Ex. 4.

Furthermore, a review of O'Donnell's testimony demonstrates that his opinion does not involve the narrow categories identified by Plaintiffs. Rather, O'Donnell's opinion involves broader general economic principles involving the use of common or joint property and the use of gross revenues as the fee for such use. O'Donnell's testimony discusses, *inter alia*, the market forces that are generally involved in setting the fee for common or joint uses of property. An economist, through his or her educational training, is qualified to educate the fact finder about such broad economic principles and market forces. *See* Fed.R.Evid. 702.

Finally, Plaintiffs' argument goes more to the weight that should be afforded O'Donnell's testimony. " 'The fact that a witness's qualifications are not unassailable does not mean the witness is incompetent to testify; [r]ather "it is . . . for the jury, with the assistance of vigorous cross-examination, to measure the worth of the opinion[s]." ' " *Valentin,* 1997 WL 33323099, at * 15 (quoting *Fox v. Dannenberg,* 906 F.2d 1253, 1256 (8th Cir.1990)) (quoting *Singer Co. v. E.I. du Pont de Nemours & Co.,* 579 F.2d 433, 443 (8th Cir.1978)). Thus, Plaintiffs' contention that O'Donnell lacks practical experience relating to the issues in this case is better left for cross-examination.

## 2. Relevancy

▪ Plaintiffs contend that O'Donnell's testimony is irrelevant because his report fails to apply his theories to the facts of this case. Specifically, Plaintiffs contend that O'Donnell fails to opine whether a five percent gross revenues fee is fair and reasonable. Therefore, his testimony is irrelevant and will not assist the trier of fact in determining an issue of fact in controversy. Colonie contends that the purpose of O'Donnell's testimony is simply to enunciate general economic principles, which are then applied to the facts of this case by the jury.

The Advisory Committee Notes to Rule 702 expressly permits this generalized testimony if, *inter alia*, the testimony addresses a subject matter on which the jury may be assisted and the testimony "fits" the facts of the case.[2] "Conducting this analysis of the 'fit' between the proffered testimony and the disputed facts of the case is another way of undertaking the relevance inquiry." *United States v. Towns,* 19 F.Supp.2d 67, 71 (W.D.N.Y. 1998) (citing *Graham v. Playtex Prod., Inc.,* 993 F.Supp. 127, 130 (1998)). Thus, O'Donnell's testimony is relevant if it relates to a factual or legal issues in dispute and helps the jury resolve such issues.

## 3. Reliability

▪ To determine whether a proffered expert's testimony is reliable, the court must focus on the methodology used to draw a conclusion and not on the conclusion itself. *Daubert,* 509 U.S. at 590, 595, 113 S.Ct. 2786. In *Daubert,* the Supreme Court enunciated several non-exclusive factors which may be considered such as: (1) whether the expert's conclusions have been tested or are testable; (2) whether

---

2. The other two requirements set forth in the Advisory Committee Notes are qualifications of the expert and reliability of the testimony. Since these two requirements are discussed separately, there is no need to reiterate these requirements here.

the expert's conclusions have been published and subjected to peer review; (3) whether the scientific technique has a potential or known error rate; and (4) whether the expert's conclusions have gained general acceptance within the scientific community. *Id.* at 593–94, 113 S.Ct. 2786. These factors are "helpful, [but are] not definitive." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Indeed, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." *Id.* at 138, 119 S.Ct. 1167.

Plaintiffs do not provide any other factors this Court should consider in determining whether O'Donnell's testimony is reliable. Plaintiffs merely contend that O'Donnell's testimony is unreliable because his opinion is based on mistaken facts. Specifically, O'Donnell's report is based on the mistaken assumption that all telecommunication providers will be subject to the five percent gross revenues fee. Apparently, however, the incumbent telecommunications carrier in Colonie, Verizon, has not paid the five percent gross revenues fee. Verizon would be subject to this five percent gross revenues fee in future applications. Plaintiffs also assert that O'Donnell mistakenly opines that public rights-of-way are a limited resource and that he has not reviewed Colonie's budget or general ledger. Colonie contends that since O'Donnell's testimony only addresses whether according to economic principles a gross revenue fee is an economically reasonable method for compensating a municipality for its costs, the only accurate fact

on which his opinion needs to be based is that Colonie imposes a gross revenues fee.

Plaintiffs do not question the underlying economic principles relied on by O'Donnell in reaching his opinion. Furthermore, the purpose of O'Donnell's testimony is to rebut Plaintiffs' contention that the gross revenues fee is per se unreasonable. The fact that Verizon has not paid the five percent gross revenues fee is relevant to Plaintiffs' claim of discrimination. Thus, the fact that O'Donnell was unaware that Verizon has not paid the five percent gross revenues fee does not make his opinion unreliable. Finally, Plaintiffs failed to explain the importance of O'Donnell's failure to review Colonie's budget or general ledger in determining the reliability of his testimony. The issued raised by Plaintiffs involve the weight that should be afforded O'Donnell's testimony and not the methodology used in reaching his conclusions.

### 4. Waste of Time, Delay and Prejudice

■ Fed.R.Evid. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Plaintiffs contend that O'Donnell's generalized testimony "has no more probative value than a cite to a treatise or scholarly article for the proposition that some economist thinks gross revenue fees are appropriate compensation for 'joint use property.'" Reply Mem. of Law (Docket No. 50), pp. 5–6.[3] Plaintiffs' argument ignores that fact that Colonie could move to admit a treatise into evidence. Instead, Colonie

---

**3.** Plaintiffs raised this argument for the first time in their reply brief. While raising arguments for the first time on reply is not looked upon favorably, Colonie has had an opportunity to address this argument during oral argument. Thus, Colonie has not been prejudice and Plaintiffs' argument is addressed here.

has chosen to present its evidence through live expert testimony. Such a strategic decision does not constitute delay, waste of time or prejudice.

Plaintiffs contend that O'Donnell's report will divert the parties from the legal issues raised. Plaintiffs fail to explain the basis for this contention. Obviously, this case will turn on expert testimony. O'Donnell is relevant to rebut a legal contention raised by Plaintiffs themselves. To prevent Colonie to rebut Plaintiffs' legal contention with expert testimony would result in prejudice to Colonie. Therefore, this contention is rejected.

In a similar vein, Plaintiffs contend that O'Donnell's testimony will force Plaintiffs to waste time considering the myriad factual deficiencies and distinguishing factors raised by his testimony. Plaintiffs cite to *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir.1997) in support of this contention. In *Unit Drilling*, the Tenth Circuit held that the district court properly excluded from evidence a prior lien dispute between defendant and another drilling company as proof of defendant's motive to withhold payment in the present breach of contract action. The Tenth Circuit held that defendant's motive was not at issue in the case and any probative value of the evidence was outweighed by waste of time and confusion of the issues. *Id.* The court in *Unit Drilling* did not deal with expert testimony and, therefore, is distinguishable from this case. Furthermore, O'Donnell's testimony is offered to rebut a legal issue raised by Plaintiffs themselves.

Finally, Plaintiffs contend that delay and the risk of prejudicing the jury substantially outweighs the probative value of O'Donnell's testimony. In support of this contention, Plaintiffs rely on *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567–68 (5th Cir.1994). In *Marcel*, the Fifth Circuit held that the district court did not abuse its discretion in excluding the testimony of defendant's expert witness regarding the life-expectancy of the plaintiff in a slip and fall action. The proposed testimony of defendant's expert witness was that the worklife of oilfield workers (the occupation of the plaintiff) is shorter than the worklife of workers in other occupations. The court excluded the testimony because the statistics and study relied on by the expert were deficient. Therefore, the court found the testimony unreliable under *Daubert*. *Id.* Thus, the applicability to Plaintiffs' contention here is negligible because he is presented more as an instructional expert than an expert opining on the ultimate issue in this case. Plaintiffs also failed to mention in their brief that the Fifth Circuit stated that "[h]ad [defendant] adequately developed [the expert's] discussion of the [ ] study in the context of relevant general economic evidence, it might be a closer question whether the district court abused its discretion in excluding his testimony." *Id.* at 567. Thus, it is arguable that *Marcel* is opposite to Plaintiffs' contention that O'Donnell's testimony should be excluded under *Daubert*.

Accordingly, Plaintiffs' motion to preclude the testimony of O'Donnell is denied.

### C. Leonard Krumm

As two of their initial experts, Plaintiffs identified as expert witnesses Patricia Kravtin and Paul Pocalyko. Kravtin is an economist whose proposed testimony includes her opinion that Local Law No. 13 is a barrier to entry and has the effect of prohibiting Plaintiffs from providing telecommunications services in Colonie. *See* Docket No. 59, Ex. C. Pocalyko is an accountant whose proposed testimony includes the opinion that Colonie's five percent gross revenues fee is not related to Colonie's actual costs incurred in managing the public rights-of-way and that Colo-

nie is capable of tracking and accounting for such costs. *See id.* at Ex. B.

In response, Colonie identified Leonard Krumm as a rebuttal expert to Kravtin and Pocalyko's testimony. Specifically, Colonie stated:

> Mr. Krumm's rebuttal testimony will respond to the portions of Plaintiffs' initial experts' reports that discuss [Colonie's] ability to account for costs incurred as a result of use of [Colonie's] rights-of-way by telecommunications providers. Mr. Krumm will address the complexity of establishing a cost-based fee, in light of the complexity involved in the effective management of the rights-of-way.

*See* Def. Mem. of Law (Docket No. 57), p. 3. Plaintiffs move to preclude Krumm's testimony on the grounds that he is not qualified, his testimony is irrelevant and his testimony is not proper rebuttal testimony. Alternatively, Plaintiffs seek leave to identify a rebuttal expert to Krumm.

### 1. Qualifications

■ Initially, it must be determined whether Krumm is qualified to testify regarding Colonie's ability to account for the costs incurred as a result of Plaintiffs use of public rights-of-way and the complexity of establishing a cost-based fee. Plaintiffs contend that since Kravtin is a economist and Pocalyko is a certified public accountant, Krumm, an engineer, is not qualified to rebut their professional analysis. Plaintiffs, however, ignore Krumm's vast experience in public rights-of-way management.

For example, Krumm is a consultant specializing in the areas of public rights-of-way management. He has testified before the Federal Communications Commission involving public rights-of-way management. Krumm Report (Docket No. 59, Ex. A), ¶ 2. He worked for over 30 years as a municipal engineer for the City of Minneapolis Public Works Department, including 20 years in the area of utility construction and operations. *Id.* In 1996,

Krumm chaired the Minneapolis City-wide Task Force for Managing the Public Rights-of-Way. *Id.* at ¶ 3. His duties included drafting two rights-of-way management ordinances and reorganized all of Minneapolis' rights-of-way management functions. *Id.* In 1997 and 1998, Krumm served on the Minnesota Public Utility Commission Advisory and Rule-Making Task Forces in the Matter of Planned Rules Governing Uniform Statewide Standards for Users of Public Rights-of-Way. *Id.* at ¶ 5. Therefore, Krumm's experience in rights-of-way management and regulation is sufficient to meet the admissibility threshold.

Finally, Plaintiffs appear to contend that the mere fact Krumm is not an economist or a certified public accountant, he is per se unqualified to rebut Kravtin and Pocalyko's testimony. Plaintiffs, however, have not cited, and this Court has not found, any authority for such a proposition. Furthermore, Plaintiffs do not explain why such a proposition should be accepted. Therefore, Plaintiffs' proposition is not accepted here.

### 2. Relevance

■ Plaintiffs contend that Krumm's testimony is irrelevant because it is speculative and is not tied to the facts of the case. Specifically, Plaintiffs contend that Krumm has not visited Colonie and is not familiar with its specific conditions. Therefore, his testimony is speculative. Plaintiffs further contend that this testimony only deals with rights-of-way management problems in general. Therefore, his testimony is not tied to the facts of this case.

As discussed above, Rule 702 permits generalized testimony if: 1) the expert is qualified; 2) the testimony addresses a subject on which the factfinder can be assisted by an expert; 3) the testimony is

reliable; and 4) the testimony "fits" the facts of the case. Here, the factfinder must determine whether a gross revenues based franchise fee is a barrier to entry and unreasonable. Kravtin and Pocalyko's testimony can be characterized as essentially asserting that public rights-of-way management is not particularly difficult or complicated. Their testimony will also discuss how Colonie could institute a cost-based fee.

In rebuttal, Krumm's testimony will provide the factfinder with an overview of what is involved in rights-of-way management and identify the flaws in Kravtin and Pocalyko's analysis. The fact Krumm has not visited Colonie and has not examined Colonie's ledgers, contracts and management plans go to the weight that should be afforded his testimony by the factfinder. Therefore, such weaknesses, if any, are better exposed during cross-examination.

### 3. Proper Rebuttal

■ Plaintiffs contend that Krumm's testimony is improper rebuttal testimony because it is Colonie's "attempt to introduce new affirmative evidence in the guise of rebuttal." Pl. Mem. of Law (Docket No. 48), p. 5. Plaintiffs contend that Krumm should have been identified as one of Colonie's initial expert witnesses under paragraph 6(a)(2) of the Uniform Pretrial Scheduling Order. Docket No. 12. Plaintiffs' contention is properly construed as a motion to preclude under Fed.R.Civ.P. 26(a)(2)(C) and 37(b).

Fed.R.Civ.P. 26(a) requires the parties intending to call expert witnesses at trial to disclose the identity of such experts, the experts' reports concerning his or her opinions and the bases for the opinions as well as the experts' qualifications and backgrounds. "These disclosures shall be made at the time and in the sequence directed by the court...." Fed.R.Civ.P. 26(a)(2)(C). "If a party ... fails to obey

an order to provide or permit discovery ..., the court ... may make such orders in regard to the failure as are just...." *Id.* at 37(b)(2); see also N.D.N.Y.L.R. 26.3 ("Failure to comply with [production of expert witness information] deadlines may result in the imposition of sanctions, including the preclusion of testimony....").

Under the Uniform Pretrial Scheduling Order filed in this case, Plaintiffs were required to identify their initial expert witnesses on or before October 13, 2001, Docket No. 12, ¶ 6(a)(1). Colonie was then required to identify its initial expert witnesses on or before November 27, 2001. *Id.* at ¶ 6(a)(2). Once the parties identified their initial expert witnesses, both parties were required to "identify all experts who will contradict or rebut evidence on the same subject matter identified by" the other party's initial expert. Id. at ¶ 6(a)(3).

On December 7, 2001, Colonie identified Krumm as a rebuttal expert to Kravtin and Pocalyko pursuant to paragraph 6(a)(3) of the Uniform Pretrial Scheduling Order. Plaintiffs contend that paragraphs 11 through 34 of Krumm's report do not specifically address Colonie's management of public rights-of-way or contradict Kravtin's or Pocalyko's opinions. As such, Krumm is not "intended solely to contradict or rebut" Kravtin's and Pocalyko' opinions. Fed.R.Civ.P. 26(a)(2)(C). Therefore, Colonie was obligated to identify Krumm as an expert witness on or before November 27, 2001, pursuant to paragraph 6(a)(2) of the Uniform Pretrial Scheduling Order.

Fed.R.Civ.P. 26(a)(2)(C) defines rebuttal experts as presenting "evidence [that] is **intended solely** to contradict or rebut evidence on the same subject matter identified" by an initial expert witness (emphasis added). Paragraph 6(a)(3) of the Uniform Pretrial Scheduling Order uses identical language to define rebuttal experts, that

is, "all experts who will contradict or rebut evidence on the same subject matter identified by" an initial expert witness. Neither the Advisory Committee Notes to Rule 26 nor case law explains what is meant by "same subject matter." After reviewing the three expert reports at issue here, whether Krumm was properly identified as a rebuttal expert turns on how the Court interprets the phrase "same subject matter."

For example, Pocalyko opines that Colonie is capable of tracking and accounting for the actual costs incurred from public rights-of-way from an accounting perspective. Krumm disputes this opinion from an engineering perspective. He provides examples of costs incurred by localities that are difficult, if not impossible, to account for. Krumm's report discusses management costs associated with construction of telecommunications utilities as well as other more subjective costs such as detours, traffic delays, increased safety concerns, negative visual impact and retarded community development. *See* Krumm Report, ¶ 26. Krumm also discusses health impacts caused by use of public rights-of-way and how these costs are not easily identifiable or accounted for.

A comparison of Pocalyko's and Krumm's reports demonstrates that each addresses the ability, or inability, of localities to account for the costs associated with use of public rights-of-way. Krumm's report may have broaden the "subject matter" by interjecting concepts meant to support his rebuttal. These concepts, though could also be construed as an independent, fresh opinion on the matter. Thus, if the Court broadly interprets "same subject matter," Krumm was properly identified as a rebuttal expert witness. If, on the other hand, the Court narrowly interprets "same subject matter," to restrict expert witnesses to not. only the same subject matter but, in essence, the same methodol-ogy, Krumm was not properly identified as an expert witness. As noted earlier, neither the Advisory Committee Notes nor case law provide any guidance on this issue. The Court is reluctant to narrowly construe the phrase "same subject matter" beyond its plain language. To accept Plaintiffs' contention would impose an additional restriction on parties that is not included in the Rules.

Furthermore, Colonie strategically decided to rebut economic and accounting expert testimony with practical expertise in engineering and public rights-of-way management. Since nothing in the Rules or case law prohibits Colonie from such a strategy, this Court will not interfere with a party's strategic decision. Moreover, whether Colonie could easily track and account for the costs incurred by use of public rights-of-way only becomes relevant through the testimony of Pocalyko. While Colonie could clearly anticipate that Plaintiffs were contending that a gross revenues fee was per se unreasonable and that only a cost-based fee is proper under the Telecommunications Act, Colonie could not completely anticipate how Plaintiffs would prove such contentions. Finally, Plaintiffs are only prejudiced, if at all, because they chose to prove their case through an economist and an accountant. Plaintiffs could have anticipated the need for an engineer to testify regarding the construction and operation of telecommunications utilities.

Nonetheless, this Court is guided by inherit notions of fairness. Plaintiffs, like this Court, had no guidance on what is meant by "same subject matter." Plaintiffs' failure to anticipate their need for an engineer is thus excusable. Therefore, this Court will provide Plaintiffs with an opportunity to address the information contained within paragraphs 11 through 34 of Krumm's report. Judicial economy and in the interest of moving this case to an

ultimate conclusion, however, dictate that Plaintiffs not be permitted to identify a new expert witness. Rather, Kravtin and Pocalyko are permitted to supplement their reports to address the issues raised by paragraphs 11 through 34 of Krumm's report.

Accordingly, Plaintiffs' motion to preclude the expert testimony of Krumm is denied.

### D. Patricia Kravtin

One of the central issues in this action is whether section 253 of the Telecommunications Act preempts all or parts of Local Law No. 13. In support of their claims, Plaintiffs identified Patricia Kravtin as an expert witness. Kravtin's proposed testimony discusses the economic impact of Local Law No. 13 and the gross revenues fee. Kravtin further proffers the opinion that Local Law No. 13 and the gross revenues fee prohibit or have the effect of prohibiting Plaintiffs from providing telecommunications services in Colonie. *See* Ames Aff. (Docket No. 52), Ex. C, p. 2. Colonie moves to preclude Kravtin's testimony on the grounds that she is not qualified, the opinion draws impermissible conclusions of law and her "economic framework" is unreliable.

### 1. Qualifications

Initially, this Court must determine whether Kravtin is qualified as an expert. Colonie contends that Kravtin is not qualified as a "regulatory expert." Therefore, she is not qualified to testify as "to the scope and requirements of Section 253 and her application of this interpretation to [Colonie's] provisions." Def. Mem. of Law (Docket No. 53), p. 12. Colonie concedes, however, that Kravtin "may be qualified to testify as to the economic issues raised by this case." *Id.* The basis of Colonie's contention really reargues its assertion that Kravtin makes impermissible legal conclusions. That argument does not involve

Kravtin's qualifications as an expert and is not discussed here.

Moreover, Kravtin's resume is replete with experience in the regulation of the telecommunications industry. For example, Kravtin was an active participant in regulatory proceedings in over 30 states and before the Federal Communications Commission ("FCC") regarding the telecommunications industry. Kravtin also served as an expert witness before state and federal regulatory agencies and before a U.S. District Court. *See* Ames Aff., Ex. C, p. 35.

Accordingly, Kravtin is qualified as an expert in this case.

### 2. Conclusions of Law

■ Colonie contends that the portions of Kravtin's report titled "Regulatory Framework" and "Summary and Conclusions" include impermissible legal conclusions. It is well established in this Circuit that expert testimony cannot "usurp the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994). "Accordingly, although an expert may give his [or her] opinion on an issue of fact that the jury will eventually decide, 'he [or she] may not give testimony stating ultimate legal conclusions based on those facts.'" *AUSA Life Ins. Co. v. Dwyer*, 899 F.Supp. 1200, 1202 (S.D.N.Y. 1995) (quoting *Bilzerian*, 926 F.2d at 1294).

The distinction between fact and legal conclusions, however, is extremely fine and courts faced with determining whether an expert's opinion goes too far are often forced to recite a slew of case law in an attempt to determine where the line should be drawn. *See, e.g., Kidder, Pea-*

*body & Co., Inc. v. IAG Inter'l Acceptance Group,* 14 F.Supp.2d 391, 399–403 (S.D.N.Y.1998). Such a recitation is not needed here. A review of Kravtin's "Regulatory Framework" portion of her report reads more like a legal brief than an expert opinion. Plaintiffs contend that the Regulatory Framework discusses the preemption cases that have been brought before the FCC and that they are relevant to establish the framework with which Kravtin analyzes the issues raised under section 253. Her review of FCC rulings and regulations impermissibly usurps the role of the trial judge in determining the relevant law. While portions of her report refer to FCC criteria, Kravtin fails to establish any nexus between these criteria and her ultimate opinion. Therefore, paragraphs 12 through 25 of Kravtin's report is precluded for purposes of anticipated summary judgment motions. *See, e.g., McKnight v. Dormitory Auth. of the State of New York,* 189 F.R.D. 225, 228 (N.D.N.Y.1999) (McAvoy, C.J.) (determining admissibility of expert report prior to determining motion for summary judgment).

For purposes of her testimony at trial, however, the Court is reluctant to preclude all testimony regarding FCC criteria at this early stage. If a proper foundation is laid and Kravtin can establish a nexus between the FCC criteria and the facts here, her testimony may be appropriate. Any testimony as to the intent of the Telecommunications Act or FCC regulations or how the jury should ultimately decide this case, however, is inappropriate.

■ Similarly, parts of Kravtin's report titled "Summary and Conclusions" are inappropriate for both summary judgment motions and testimony at trial. Paragraph 73 discusses the intent of the Telecommunications Act and states an impermissible

legal conclusion. Paragraph 74 "merely tells the jury what result to reach...." Advisory Committee Note to Fed.R.Evid. 704(a). Nonetheless, paragraph 75 does not cross the line into impermissible legal conclusion. Rather, Kravtin opines why she believes Local Law No. 13 is a barrier to entry. Therefore, paragraphs 73 and 74 are precluded and paragraph 75 is admitted.

### 3. Reliability

Colonie contends that the Economic Framework section of Kravtin's report is unreliable. Specifically, Colonie contends that Kravtin's economic framework is unreliable because 1) it misquotes a key source; 2) its application to Local Law No. 13 attempts to cloak Kravtin's "conclusions in pseudo-scientific camouflage;" and 3) it is not connected to Kravtin's conclusions.[4]

■ Kravtin uses the structure-conduct-performance paradigm ("S–C–P paradigm") to assess whether Colonie's franchise fee is a barrier to entry. *See* Kravtin Report (Docket No. 52, Ex. D), pp 27–30. In tailoring this paradigm in the context of the telecommunications industry and in determining whether something is a barrier to entry, Kravtin utilizes a two-stage inquiry proposed in Viscusi, Vernon and Harrington, "Economics of Regulation and Antitrust", 2nd Ed., 1998 (MIT Press) ("Viscusi"). *See id.* at ¶ 41. Colonie contends that the use of this two-stage inquiry is flawed because Kravtin leaves out a vital section of the passage in Viscusi. Indeed, prior to enunciating a two-stage test on determining whether something is a barrier to entry, Viscusi concedes that there is no accepted and meaningful definition of a barrier to entry. *See* Def. Mem. of Law

---

4. Colonie also contends that the economic framework is inextricably intertwined with improper legal conclusions. Since the extent to which Kravtin may opine on legal issues was addressed above, Colonie's contention is not rehashed here.

(Docket No. 13), p. 15. After reviewing the complete passage, however, Colonie's contention is better left for cross-examination. The portion of Vicusi's quote left out of the passage does not effect the reliability of Kravtin's methodology. Rather, the quote left out of the passage may affect the weight that the factfinder chooses to afford Kravtin's paradigm.

Colonie's second contention is essentially arguing that Kravtin's framework is "junk science." Colonie, however, fails to demonstrate that any of the economic principles utilized by Kravtin are not widely accepted within the relevant field. Indeed, Colonie fails to rebut Kravtin's statement that the S–C–P paradigm "enjoys a long history and wide acceptance in the economic literature and in the antitrust courts." Kravtin Report, ¶ 27. Colonie further attacks Kravtin's report with a mere conclusory statement that "a practicing economist would use entirely different methods..." Def. Mem. of Law (Docket No. 53), p. 16. A review of Kravtin's report and the citations relied on in developing her methods demonstrates that her methodology is grounded in accepted methods or procedures of economic analysis. Therefore, Colonie's contention is rejected.

Colonie's final contention is essentially arguing that there is no connection between the methodology used and Kravtin's conclusions. In *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the Supreme Court noted that the focus of the gatekeeper must be on the principles and methodology of the expert opinion and not on the expert's conclusions. The *Joiner* Court continued, however, stating that

> "[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in Daubert or the Federal Rules of Evidence

requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. The court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."

522 U.S. at 146, 118 S.Ct. 512. Thus, *Joiner* requires both a reliable methodology and a reliable application of that methodology. An expert is required to explain how and why he or she reached the opinion and the trial court is charged with examining the link between the methodology and the conclusions.

Colonie contends that Kravtin fails to make any connection between the S–C–P paradigm and her conclusion that Local Law No. 13 is a barrier to entry. Colonie's contention is not without merit. Kravtin supposedly begins her analysis of Local Law No. 13 under the S–C–P paradigm at paragraph 42 of her report. For approximately ten paragraphs, however, there is no language in her analysis that mirrors the same or similar language that is used in the paradigm. *See* Kravtin Report, ¶¶ 42–51. Indeed, Kravtin appears to conclude that Local Law No. 13 is a barrier to entry prior to engaging in any analysis. Nonetheless, Kravtin does begin to make a connection in paragraph 52 of her report. While it is a tenuous nexus and the Court was required to peer behind every work to find the logic between the paradigm and conclusions, there is a sufficient causal link for purposes of admissibility. Colonie's contention is better left for cross-examination and rebuttal testimony.

**4. Waste of Time, Delay and Prejudice**

Finally, Colonie moves to preclude Kravtin's testimony as a waste of time under Fed.R.Evid. 403. Colonie's contention here is similar to its contentions under *Daubert*, i.e., Kravtin's opinion is "essen-

tially a legal brief." Def. Mem. of Law (Docket No. 53), p. 17. Colonie also argues that Kravtin's testimony should be precluded because it is too long. The portions of Kravtin's report that includes improper legal conclusions have been stricken. Thus, Colonie's contention is moot. As for the length of Kravtin's report, there is no page limit on expert reports and this Court is reluctant to create one here.

**WHEREFORE**, it is hereby

**ORDERED** that:

1) Plaintiffs' motion to preclude the testimony of Dennis J. O'Donnell is **DENIED**;

2) Plaintiffs' motion to preclude the testimony of Leonard Krumm is **DENIED**; Plaintiffs, however, may supplement the expert reports of Pocalyko and Kravtin to address the issues raised in Krumm's report; Plaintiffs shall serve any supplementation **within 60 days of the date of this order**; and it is

3) Colonie's motion to preclude the testimony of Patricia Kravtin is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**