United States Court of Appeals,

Fifth Circuit.

No. 91-3788.

Jeffrey J. MARCEL, et al., Plaintiffs-Appellees,

Jeffrey J. Marcel, Plaintiff-Appellee Cross-Appellant,

v.

PLACID OIL COMPANY, Defendant-Appellant Cross-Appellee.

PLACID OIL COMPANY, Third Party Plaintiff-Appellant,

v.

SEE INC., A subsidiary of Wedge Energy Group, Inc., Third Party Defendant-Appellee.

Jan. 14, 1994.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and WERLEIN,[*] District Judge.

GARWOOD, Circuit Judge:

Plaintiffs Jeffrey and Penny Marcel, individually and on behalf of their three minor children, filed this action in Louisiana state court against defendant Placid Oil Company (Placid), seeking damages for an injury sustained by Mr. Marcel (Marcel) while working on an offshore platform operated by Placid. Placid removed to the United States District Court for the Eastern District of Louisiana and filed a related third party claim against SEE, Inc. (SEE) for alleged breach of an insurance agreement. The district court granted summary judgment for SEE. A jury rendered a verdict in favor of plaintiffs, which the district court amended to increase the award to Marcel. The award to Mrs. Marcel was decreased upon Placid's motion for new trial and/or motion for remittitur. Placid appeals, and Marcel cross-appeals.[1]

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[1]Although the brief of the plaintiffs-appellees is ostensibly filed on behalf of all plaintiffs, the notice of cross-appeal mentions only Mr. Marcel. Therefore, the cross-appeal is not perfected as to any plaintiff except Mr. Marcel. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 315, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988); *Griffith v. Johnston,* 899 F.2d 1427, 1429-1430 (5th Cir.1990) *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

**Facts and Proceedings Below**

At the time of his accident, Marcel worked as a maintenance man for SEE, on the South Marsh Island 281-C (the platform), a fixed platform located on the outer continental shelf in the Gulf of Mexico off the coast of Louisiana. Placid operated the platform for mineral lease holders; SEE provided workover services for several oil and gas wells on the platform.

On January 3, 1990, Marcel was injured in a slip-and-fall accident on the platform. He and a SEE roustabout, Clarence Etheridge, were walking along the deck of the platform on their way to repair a mud pump; as Marcel turned a corner and ducked under a platform beam, he looked back over his shoulder to see if Etheridge were still behind him. As he turned back around, Marcel slipped on the deck, landing on his lower back. He testified that he had slipped in a puddle of oil on the deck measuring six feet by four feet and one inch deep; the source of the puddle was a nearby trough drain. Marcel claimed that he did not see the puddle because the light in the area was not operating.[2]

Following this accident, Marcel was treated by Dr. Walker, an orthopedic surgeon who performed a laminectomy and diskectomy on him in May 1990. Dr. Walker advised him to avoid continuous work on a vibrating surface and work requiring continuous standing or frequent bending and stooping.[3] Marcel had not returned to work at the time of the trial.

Plaintiffs filed suit against Placid in Louisiana state court on July 5, 1990, raising claims of strict liability and negligence. Placid timely removed the action to the United States District Court for the Eastern District of Louisiana on grounds of diversity of citizenship and claims involving the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, *et seq.* The Travelers Insurance Company intervened, seeking reimbursement for payments it had made to Marcel under the

---

[2]Although no other witness testified that they saw this puddle or that the lighting in the area was not working, there was additional evidence about the drains backing up. There was also testimony that the diamond design on the deck, provided for traction, was worn thin.

[3]A previous back injury sustained in an offshore accident in April 1983 had kept Marcel from work for approximately two years. Dr. Cenac, the orthopedic surgeon who treated him for that injury, released him to return to work but with restrictions to protect his back. These restrictions included no repetitive stooping, squatting, kneeling, bending, lifting weights of greater than fifty pounds, or prolonged sitting or standing without rest.

Longshore and Harbor Workers' Compensation Act.[4]

An October 1989 agreement between Placid and SEE provided that SEE would perform workover services on fixed platforms operated by Placid, including the platform on which Marcel was working. As part of the agreement, SEE agreed to obtain insurance indemnifying Placid and identifying Placid as a named insured. Placid was to be billed directly by the insurance brokers for its share of the insurance premiums. Although Schedule E of the contract stated that SEE had "already negotiated the premium," it is undisputed that SEE did not procure the insurance for Placid. Placid discovered only after Marcel's accident that SEE had never obtained this coverage.

Placid filed a third-party complaint against SEE, alleging breach of contract arising out of SEE's failure to provide Placid with insurance coverage as provided in the agreement between the two parties. SEE filed a motion for summary judgment, claiming that the agreement to procure insurance coverage for Placid violated the Louisiana Oilfield Indemnity Act (LOIA), La.Rev.Stat. § 9:2780. The district court initially denied this motion but later reconsidered the motion, *sua sponte,* and granted summary judgment for SEE.

A jury trial in May 1991 resulted in a verdict for the plaintiffs; the jury found Placid negligent but not strictly liable for the injuries sustained by Marcel and awarded $313,800 to Marcel, $40,000 to Mrs. Marcel, and $15,000 to each of the three children. The district court amended the judgment to increase the award to Marcel to $332,188.83, adding in the amount stipulated for past medical expenses.

Placid filed a motion for new trial and/or motion for remittitur. Without a hearing, the district court denied the motion for new trial on the issues of negligence and comparative fault and denied the motion for remittitur on the children's damages; the court granted the motion for new trial on the issue Mrs. Marcel's claim for loss of consortium, subject to acceptance of a remittitur from $40,000 to $25,000. Mrs. Marcel accepted the remittitur, and final judgment was entered, as amended, on August 15, 1991. Placid appeals this judgment and the grant of summary judgment in favor of SEE. Marcel appeals the finding that Placid was not strictly liable for his injuries and the award of damages

---

[4]No party appeals the award of $37,109.68 to Travelers as reimbursement for these payments.

calculated by net (after tax) rather than gross wage loss.

## Discussion

I. Jury Verdict

Placid contests the jury's findings that Marcel's injuries were caused by Placid's negligence. It argues that the district court erred in denying its motion for a directed verdict on the issue of negligence and that the evidence does not support the jury's findings that Placid was negligent and that Marcel was not. A jury verdict "must be upheld unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at any verdict to the contrary." *Granberry v. O'Barr,* 866 F.2d 112, 113 (5th Cir.1988) (quoting *Western Co. of North America v. United States,* 699 F.2d 264, 276 (5th Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983)). See *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1228 (5th Cir.1988), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989) (more restrictive standard of review where issue raised only by motion for new trial and not by proper motion for directed verdict).

After reviewing the record before us, we conclude that there is sufficient evidence to support the verdict.

The district court did not err in denying Placid's motion for a directed verdict on the issue of its negligence or in denying its motion for new trial on the issue of Marcel's contributory negligence.

II. Evidentiary Rulings

Evidentiary rulings are reviewed for an abuse of discretion and may be reversed only if the ruling affects a substantial right of a party. *Seidman v. American Airlines, Inc.,* 923 F.2d 1134, 1138-1139 (5th Cir.1991).

A. *Plaintiffs' Experts*

Placid contests the district court's denial of its motions in limine to exclude the testimony of plaintiffs' expert economist, Dr. Randolph Rice, and plaintiffs' vocational evaluator, Allen Simmons. This testimony concerned Marcel's lost future wages. Placid did not object to the testimony of Dr. Rice at trial and thus may not contest the district court's ruling with regard to the economist's testimony. Fed.R.Evid. 103(a)(1). The general rule in this Circuit is that "an overruled motion in

limine does not preserve error on appeal." *Rojas v. Richardson,* 703 F.2d 186, 189 (5th Cir.1983); *see also Collins v. Wayne Corp.,* 621 F.2d 777, 784 (5th Cir.1980).

Placid contends that Marcel's current injury should not result in a loss of future wages because he was subject to the same physical restrictions before and after the accident at issue here, due to his prior injury, which did not prevent his returning to work without loss of income. Placid's argument is based solely upon the testimony of Dr. Cenac, the physician who treated Marcel following his 1983 injury. There was other medical evidence, however, indicating that Marcel is now under a disability that did not exist prior to the 1990 accident. Because this evidence supports the allowance of testimony regarding the effect of the injury on Marcel's future wages, the district court did not abuse its discretion in respect to the testimony of Mr. Simmons.

### B. Placid's Expert Economist

The district court excluded testimony of Placid's expert economist, Dr. Boudreaux, upon plaintiffs' motion in limine. The proposed testimony concerned the worklife expectancy of an oilfield worker and was based on a study by Richard Camus & Associates on this subject (Camus study).[5] Placid contends that the testimony based on the study was admissible as data upon which an expert bases an opinion:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed.R.Evid. 703.

Plaintiffs criticized the Camus study and the testimony based upon it, claiming that it was outdated, statistically suspect, and untrustworthy and that evidence presented at trial regarding longer

---

[5]Plaintiffs contend that Placid failed to preserve this issue for appeal because it did not proffer either the Camus study or the testimony of Dr. Boudreaux. Federal Rule of Evidence 103(a)(2) provides that in order to preserve error concerning a ruling excluding evidence, a substantial right of the party must be affected and the substance of the evidence must be made known to the court by offer unless apparent from the context. Placid asserts that it did proffer a report by Dr. Boudreaux containing the expert's conclusions drawn from the Camus study. Assuming, *arguendo,* that this proffer was sufficient to preserve the issue, we nevertheless find that the exclusion of Dr. Boudreaux's testimony did not amount to an abuse of discretion.

worklives contradicted the study's conclusions.[6] "[T]he Rules of Evidence ... assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* --- U.S. ----, ----, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* --- U.S. at ----, 113 S.Ct. at 2795. Further, the district court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* --- U.S. at ----, 113 S.Ct. at 2798. Fed.R.Evid. 403.

In presenting the proposed testimony of Dr. Boudreaux, Placid did not tender any evidence comparing the worklife in the oilfield with the national average or with the worklife of any other occupation. Placid attempted to introduce the specific statistics in the Camus study without reference to any other information which would show that Marcel would likely have a shorter worklife and thus should not receive damages based on an average worklife.

Had Placid adequately developed Dr. Boudreaux' discussion of the Camus study in the context of relevant general economic evidence, it might be a closer question whether the district court abused its discretion in excluding his testimony. Without some indication of how the oilfield worklife differs from that of other occupations, however, there are several bases upon which the district court could have excluded the evidence, for example, a finding that the probative value of the Camus study did not outweigh the prejudice to the plaintiffs of its admission or that it was not sufficiently reliable in the present context. Upon the record before us, we cannot hold that it was an abuse of discretion to exclude the tendered evidence.

III. Remittitur of Awards to Children

Placid claims that the district court should have granted its motion for remittitur regarding the awards of $15,000 to each of the three minor children for past and future losses of their father's society because the awards were excessive and were not supported by the evidence. Plaintiffs attempted to show that Marcel was no longer able to play with the children as he had before he

---

[6]Plaintiffs also contend that the study was inadmissible as hearsay. Experts generally may rely on hearsay, however, if the data is reliable and qualifies under Rule 703. *Soden v. Freightliner Corp.,* 714 F.2d 498, 502 (5th Cir.1983).

accident, that he was short-tempered, and that the children were too young to understand the reasons for their father's change.[7]

We review the denial of a motion for new trial or motion for remittitur for an abuse of discretion. *Brunnemann v. Terra Int'l, Inc.,* 975 F.2d 175, 177 (5th Cir.1992). Where a damage award is excessive or so large as to appear contrary to right reason, the award is generally subject to remittitur, not a new trial. *Id.* at 178.

We review a claim of excessiveness by comparing the awards at issue with rulings in other factually similar cases decided under controlling law, here Louisiana law. *Douglass v. Delta Air Lines, Inc.,* 897 F.2d 1336, 1339 (5th Cir.1990); *see also In re Air Crash Disaster Near New Orleans,* 767 F.2d 1151, 1156 (5th Cir.1985) ("[f]or what rough guidance they provide, we examine past awards for similar injuries").[8]

Upon an examination of the awards for loss of a parent's society allowed by Louisiana courts, we conclude that the awards to plaintiffs' minor children in this case were excessive. In cases where the loss sustained by the child is similar to that in the case before us, Louisiana awards are uniformly between one and five thousand dollars per child. *See LeBaron v. Allstate Ins. Co.,* 572 So.2d 174 (La.App. 1st Cir.1990) (noting unchallenged awards of $2,000 to each child for loss of consortium), *writ denied,* 575 So.2d 827 (La.1991); *Savoy v. Martiny Warehouse, Inc.,* 539 So.2d 884 (La.App. 4th Cir.1989) (affirming awards of $1,000 and $2,000 where father no longer played with children for fear of re-injury); *Peterson v. Western World Ins. Co.,* 536 So.2d 639 (La.App. 1st Cir.1988) (affirming awards of $5,000 to each child where father was short-tempered and no longer participated

[7]At the time of trial, Melissa was seven years old, Candice was three, and Brittany was twenty months. We note that this argument cuts both ways. The youngest child was only three or four months old at the time of Marcel's accident and could not have sustained substantial damages for past loss of her father's society.

[8]Marcel argues that we cannot compare cases to determine if a jury award is excessive, citing *Hernandez v. M/V Rajaan,* 841 F.2d 582, 587 (5th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988). This case, however, without comment, contradicts several earlier cases of this Circuit which allowed case comparisons. *See In re Air Crash Disaster Near New Orleans,* 767 F.2d at 1156; *Haley v. Pan American World Airways, Inc.,* 746 F.2d 311, 317-319 (5th Cir.1984). More recent cases have cited *Hernandez* while still holding that case comparisons are appropriate. *Seidman v. American Airlines, Inc.,* 923 F.2d 1134, 1141 (5th Cir.1991); *Williams v. Chevron U.S.A., Inc.,* 875 F.2d 501, 506 (5th Cir.1989).

in activities with children), *writ denied,* 541 So.2d 858 (La.1989).

Only in exceptional circumstances has a larger award been upheld. In *Trahan v. Thomas,* 544 So.2d 695 (La.App.3d Cir.1989), the court affirmed an award of $35,000. There, however, the child was physically and mentally disabled prior to his mother's accident and to an unusual extent relied on her for his special needs. The loss of the mother's care in that extraordinary situation is not factually analogous to our case and has no tendency to justify the awards in question.

We conclude that the district court abused its discretion in denying Placid's motion for a new trial or for remittitur of the children's awards. We direct a remittitur of the awards to each child from $15,000 to $7,000.00 under application of the maximum recovery rule.[9] Should plaintiffs refuse to accept this remittitur, we direct the district court to grant a new trial on this issue.

IV. Summary Judgment for SEE

Placid challenges the district court's grant of summary judgment for SEE, claiming that its agreement with SEE does not violate the LOIA because it falls within the exception created in *Patterson v. Conoco, Inc.,* 670 F.Supp. 182 (W.D.La.1987).[10]

The LOIA voids oilfield agreements to the extent the agreements contain provisions for indemnification for losses caused by negligence or fault of the indemnitee.[11] Under the agreement at

---

[9]Because the present awards are higher than 1337 of the $5,000 awarded in *Peterson,* the highest previous award in a factually similar case, the maximum recovery rule becomes operative. *Douglass,* 897 F.2d at 1344 n. 14. Under this rule, we generally will not reduce damages where "the amount awarded is not disproportionate to at least *one factually similar* case from the relevant jurisdiction." *Id.* at 1344 (emphasis in original). An award which is found to be excessive when compared to other relevant cases is thus normally reduced to approximately 337 above the highest amount previously recognized in the state. *See Id.* at 1344 n. 14 (citing the application of the maximum recovery rule in *Haley v. Pan Am. World Airways, Inc.,* 746 F.2d 311 (5th Cir.1984)).

[10]Placid also contends that the district court erred in failing to grant a new trial on the issue of the parties' intent in entering the agreement, which Placid alleges was an issue of material fact precluding summary judgment; that SEE was estopped from raising the LOIA argument; and that the agreement between SEE and its insurance brokers created a stipulation *pour autrui* for the benefit of Placid. The estoppel and stipulation *pour autrui* arguments do not prevent application of the LOIA; in addition, there is no evidence of any agreement between SEE and its insurance brokers made for Placid's benefit which would support the latter argument.

[11]The pertinent provisions of the LOIA are as follows:

"A. ... It is the intent of the legislature by this Section to declare null and void and

issue in *Patterson,* the employer of the injured plaintiff was required to provide insurance coverage indemnifying a third party, an arrangement within the reach of the LOIA and similar to the terms agreed to by Placid and SEE. The agreement provided, however, that the indemnitee would reimburse the employer for the insurance premiums. The indemnitee produced evidence documenting its payment of these premiums over a period of approximately eighteen months. Based upon this reimbursement, the court concluded that the agreement was not void because the indemnitee had paid for its own insurance.

Although this Court has not ruled directly on the *Patterson* exception, we tacitly approved it in *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.,* 864 F.2d 1171, 1176 (5th Cir.1989) (affirming dismissal, without indicating disapproval of *Patterson,* because request to court for inquiry into payment of premiums was untimely).

We now adopt the exception created in *Patterson* as law of this Circuit and find that it has potential application here.[12] The LOIA is aimed at preventing the shifting of the economic burden of insurance coverage or liability onto an independent contractor. If the principal pays for its own liability coverage, however, no shifting occurs. We see no need to prevent such an arrangement in order to give effect to the LOIA. Indeed, agreements such as the one in *Patterson* may be economically desirable in situations where it is less expensive for the independent contractor to add

---

against public policy of the State of Louisiana any provision in any agreement [pertaining to oil and gas wells] which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

"G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section [which include reworking and repairing oil and gas wells] ... which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect." La.Rev.Stat. § 9:2780.

[12]SEE asserts that the exception should not apply because, unlike the situation in *Patterson,* Placid never paid any insurance premiums. We disagree. As SEE did not procure the insurance, which it had agreed to do, there were no premiums for Placid to pay. Further, only two months separated the time the parties entered the agreement at the end of October 1989 and the time of the accident on January 3, 1990; in *Patterson,* the indemnitee had paid premiums for approximately eighteen months.

the principal as an additional insured than for the principal to obtain its own insurance on a particular operation.

In approving this exception, however, we stress that the exception does not apply if any material part of the cost of insuring the indemnitee is borne by the independent contractor procuring the insurance coverage.

SEE, as the party requesting summary judgment, had the burden of demonstrating that the insurance agreement was void under the LOIA and that there was no fact issue regarding any economic burden on SEE. It is not clear from the record, however, that this is true. Amendments to the agreement between Placid and SEE provide that Placid was to pay one-half of the premium paid by SEE

> "for this Contract to perform these services which shall be 0.6757 of Daily Revenue. Insurance premiums will be over and above the contract rates and will be in consideration for insurance supplied, not consideration paid to or for the benefit of SEE, Inc. Essentially, this means that over the life of the job Placid would be paying approximately $34-$36/day to be named as an additional insurer [sic] under the policy. Monthly billings will be transmitted to Placid by our Brokers after the revenues for the previous month have been determined." Amendment to Exhibit E of the Workover Contract.

Although Placid's payment is to be one-half the premium paid by SEE, our analysis does not end without knowing how much of the insurance cost is attributable to insuring Placid. The burden to show this was on SEE, the summary judgment movant that was to procure the insurance. Because it is not clear from the record before us whether SEE paid for any cost of insuring Placid, we cannot determine that this contract does not fall within the *Patterson* exception.

We reverse the district court's summary judgment for SEE and remand Placid's third-party claims for reconsideration in light of *Patterson*. If Placid was responsible for the full cost of obtaining its insurance, the agreement is similar to that in *Patterson* and is not void under the LOIA; if SEE paid any material part of the cost of Placid's insurance, however, the district court should reinstate its summary judgment in favor of SEE.

### Cross-Appeal

V. Calculation of Damages

Marcel contends on cross-appeal that the district court erred in awarding damages for past

and future wage loss in net, after-tax dollars rather than gross, pre-tax dollars. He questions the court's ruling that when a state-created remedy is borrowed in a case arising under the OCSLA, the remedy is borrowed in its entirety, except that part of the remedy which calls for gross wages as the proper measure of damages.

The OCSLA provides that the laws of the adjacent state apply in the place of federal law "[t]o the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws." 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 355-358, 89 S.Ct. 1835, 1837-1839, 23 L.Ed.2d 360 (1969).

The Supreme Court has addressed the applicability of state law and federal law for the purpose of determining the measure of damages in the context of the Federal Employers' Liability Act (FELA). In *Norfolk & Western Ry. Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the Court held that questions concerning the measure of damages in a FELA action are a matter of federal law and that it was error to refuse a jury instruction on the nontaxability of personal injury awards. The Court stated that net, after-tax wages were the appropriate measure of damages for loss of future earnings under federal law. *Id.,* 444 U.S. at 492, 100 S.Ct. at 757.

In *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the Court was faced with the same question concerning jury instructions in an action arising under the OCSLA. The Court declined to reach t his issue and remanded for the lower court to determine what the law of Louisiana was on the issue and to decide, if there were an inconsistency with federal law, whether *Liepelt* displaced the Louisiana rule. On remand, the Texas Court of Appeals, applying Louisiana law, held that Louisiana law did not require such an instruction. The court concluded that "when OCSLA borrowed the [state law] remedy, it borrowed the remedy in its entirety. In other words, OCSLA made the entire state cause of action *applicable* federal law, enforceable as federal law." *Gulf Offshore Co. v. Mobil Oil Corp.,* 628 S.W.2d 171, 174 (Tex.App.—Houston [14th Dist.], writ ref'd n.r.e.) (emphasis in original), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982). We approved this holding in *Olsen v. Shell Oil Co.,* 708 F.2d 976, 983 (5th Cir.1983) (adopting the state rule on inflation), *cert. denied,* 464 U.S. 1045, 104 S.Ct.

715, 79 L.Ed.2d 178 (1984).

Although Placid cites *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), for the general rule that state law applies only if not inconsistent with federal law, this Court has accepted the reasoning that the state cause of action becomes federal law for the purpose of an OCSLA case. *See Olsen,* 708 F.2d at 983 ("We think the Texas Court of Civil Appeals reached the result required by *Rodrigue*....").

The majority rule in Louisiana is that the remedy for past and future wage loss in personal injury actions is gross, pre-tax wages. *See Harris v. Tenneco Oil Co.,* 563 So.2d 317, 324-326 (La.App. 4th Cir.), *writ denied,* 568 So.2d 1062 (1990). Applying the reasoning of *Gulf Offshore* here, it was error for the district court to award damages calculated on net, after-tax wages.

We reverse the judgment of the district court regarding the award of damages to Marcel for the loss of past and future wages to the extent that this award was based upon net, rather than gross, wages. The form for the interrogatories to the jury provided spaces for calculation of both gross and net past and future wage loss.[13] The jury responded with both figures, and the district court calculated the judgment using the net wage loss amount. Based upon the jury's responses, we are able to determine that the proper award to Marcel, based upon gross wage loss, is $375,388.83.[14]

---

[13]The district court instructed the jury in essence that gross wages were pre-tax wages or wages before deductions, and that net wages were after-tax wages or take-home pay.

The district court also instructed the jury that no part of the sums awarded by it would be subject to federal income tax.

Neither party complains of the instructions. As do the parties, we address the issue only as regards pre-tax and after-tax wages.

[14]This judgment, in the full sum of $375,388.83, is calculated as follows:

(1) $28,000.00 for gross past lost wages;

(2) $260,000.00 for gross future lost wages;

(3) $42,500.00 for pain, suffering, mental anguish, and disability;

(4) $25,000.00 for future pain, suffering, mental anguish, and disability;

(5) $1,500.00 for future medical and rehabilitation expenses; and

We do not fault the district judge. An award based on gross rather than net wages has little to recommend it as a matter of either economics or justice. Nevertheless, that appears to be the law of Louisiana adopted as federal law under OCSLA, and we are bound to comply.

## VI. Strict Liability

Marcel's second contention on cross-appeal is that the jury erred in not finding Placid strictly liable for his injuries. This contention is immaterial, as Marcel received damages for his injury under the jury's finding that Placid was negligent.

### Conclusion

We sustain Placid's appeal against plaintiffs only on the issue of the awards to the children; we reverse the award of summary judgment in favor of SEE on Placid's third party claims; and we sustain Marcel's cross-appeal on the issue of calculation of wage loss and render judgment in his favor in the sum of $375,388.83 (with interest as specified in the district court's judgment). We affirm all other issues before us.[15]

The judgment of the district court is

AFFIRMED in Part; REVERSED and REMANDED in Part.

* * * * * *

---

(6) $18,388.83 for stipulated past medical expenses.

[15]We need not address a dispute over attorneys' fees raised by intervention in the lower court as the parties concerned have reached a settlement on this issue.