**United States Court of Appeals**
**For the Fifth Circuit**

_____

**01-30779**

_____

**Charles C. Rogers, et al.**
**Plaintiffs**

**versus**

**Samedan Oil Corporation, et al.**
**Defendants**

**Samedan Oil Corporation**
                    **Defendant-Third Party Plaintiff**
                    **Appellee-Cross-Appellant**

**versus**

**Lexington Insurance Company**
                    **Third Party Defendant**
                    **Appellant-Cross-Appellee**

_____

**Appeals from the United States District Court**
**for the Eastern District of Louisiana**

_____

October 14, 2002

Before DAVIS, SMITH and BENAVIDES,  Circuit Judges.

DAVIS, Circuit Judge:

Appellant, Lexington Insurance Company ("Lexington"), challenges the district court's

summary judgment in favor of Appellee, Samedan Oil Corporation ("Samedan").  The district court

concluded that Samedan's recovery against Lexington under endorsements to liability policies issued

to Samedan's contractor, Pride Offshore, Inc. ("Pride"), was not barred by the Louisiana Oilfield

Indemnity Act ("LOIA"). La. Rev. Stat. 9:2780, *et seq*. We agree with the district court that the LOIA does not invalidate Samedan's coverage because the record is uncontradicted that Samedan paid the entire premium for that coverage.

I.

Charles Rogers began this litigation when he filed a personal injury suit in state court in Louisiana against Samedan. Samedan removed the suit to the federal district court based on diversity. Several other parties were added thereafter.

When Rogers was injured he was employed by Pride and assigned to work aboard Samedan's platform located in East Cameron Block 331 off the coast of Louisiana. Rogers' employer, Pride, was operating the drilling rig pursuant to a contract with Samedan on the Samedan platform. The parties settled Rogers' action before trial for $475,000 of which Samedan contributed $100,000 and its commercial general liability carrier, Commercial Underwriters Insurance Company ("Commercial Underwriters"), contributed $274,250.

Upon settlement of the main demand, the only issues remaining before the district court were those relating to the Third Party Demand asserted by Samedan against Lexington. In its demand, Samedan sought recovery against Lexington for settlement costs of $374,250 together with attorneys' fees and statutory penalties under La. Rev. Stats. 22:658 and 22:1220.

Lexington is the liability insurer of Rogers' employer, Pride. Prior to Roger's accident, Lexington issued a three-year commercial general liability policy and an umbrella policy to Pride, with liability limits of $11 million dollars (the "Lexington Policies"). Special endorsements entitled "Louisiana Anti-Indemnity Statute Coverage" (the "Lexington Endorsements") were later added to

the Lexington Policies, naming Samedan as an additional insured in the Lexington Policies.[1]  The

_____

[1]

The Lexington Endorsements, policy number 95EN007790A and 95EN0007800A, read as follows:

PRIDE PETROLEUM SERVICES, INC.
LOUISIANA ANTI INDEMNITY STATUTE COVERAGE

It is hereon understood and agreed, with effect from Inception, that the Indemnified Parties are Named Insureds under this Policy.

Notwithstanding anything contained to the contrary, the Insurance provided to the Indemnified Parties hereunder excludes all liabilities other than those arising from operations performed under Contract(s) between Operator and Contractor dated TBA (the "Contract"). Such insurance shall be primary (and not excess of contributing insurance, relating to any other policies carried by the Operator), but only as to those claims an [sic] liabilities as to which the parties have stated in the Contract their intent (independent of issues regarding enforceability) are borne by Contractor.

In consideration of above, agree an additional premium of US$500 in full for period per Operator, if required.

Indemnified Parties (Anticipated)
Samedan and/or its affiliated and/or associated and/or subsidiary companies.

And/or others as maybe [sic] agreed by written contract by the named Insured. (Emphasis added).

PRIDE PETROLEUM SERVICES, INC.
LOUISIANA ANTI INDEMNITY STATUTE COVERAGE

It is hereon understood and agreed, with effect from Inception, that the Indemnified Parties are Named Insureds under this policy, subject to the sub-limit of US$10,000,000 hereon.

Notwithstanding anything contained to the contrary, the Insurance provided to the Indemnified Parties hereunder excludes all liabilities other than those arising from operations performed under Contract(s) between Operator and Contractor dated TBA (the "Contract"). Such insurance shall be primary (and not excess of contributing insurance, relating to any other policies carried by the Operator), but only as to those claims an [sic] liabilities as to which the parties have stated in the Contract their intent (independent of issues regarding enforceability) are borne by Contractor.

In consideration of above, agree an additional premium of US$1,500 in full for period per Operator, if required.

Indemnified Parties (Anticipated)
Samedan and/or its affiliated and/or associated and/or subsidiary companies.

And/or others as may be agreed by written contract by the named Insured. (Emphasis added).

Lexington Endorsements were added before Rogers' accident.

Lexington charged Samedan two thousand dollars per year for the coverage provided by the Lexington Endorsements. These separate premiums were paid directly by Samedan with no contribution from Pride.

In August 1997, following demand upon Lexington for defense and indemnification, Lexington assumed Samedan's defense of the Roger's suit. However, in November 1999, after the Louisiana First Circuit Court of Appeal denied rehearing *Amoco Prod. Comp. v. Lexington Ins. Co.*, Lexington informed Pride that it was withdrawing its defense and indemnity of Samedan. *See Amoco Prod. Comp. v. Lexington Ins. Co.,* 98-1676 (La.App. 1 Cir. 9/24/99) 745 So.2d 676, *writ denied,* 1999-3553 (La. 2/25/00) 755 So.2d 253.

On cross Motions for Summary Judgment, the district court determined that the LOIA did not preclude Samedan from enforcing its rights under the Lexington Policies. After a trial on the remaining issues, the district court determined that Lexington was liable to Samedan for its attorney's fees and settlement costs of $374,250. However, the court found that Lexington's withdrawal of Samedan's defense was not in bad faith, thus Samedan was not entitled to penalties or damages under La. Rev. Stats. 22:658 and 22:1220. Both parties have appealed.

II.

Lexington first argues that the Lexington Endorsements, naming Samedan as an additional insured are not enforceable under the LOIA. La. Rev. Stat. 9:2780, *et seq*. As this issue was resolved on cross Motions for Summary Judgement, we review it *de novo*. *Apani Southwest, Inc. v. Coca-Cola Enters.,* 300 F.3d 620 (5th Cir. 2002); *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 559 (5th Cir. 1997).

LOIA was enacted to prevent an "inequity foisted on certain contractors and their employees

by the defense and indemnity provision contained in some agreements pertaining to wells for oil, gas or water, . . . to the extent those provisions apply to death or bodily injury to persons." La. Rev. Stat. 9:2780 A. Through LOIA, the Louisiana Legislature declared null and void and against public policy of the State of Louisiana any provision in such agreements which require the defense or indemnification for death or bodily injury to persons caused by the negligence or fault of the indemnitee. La. Rev. Stat. 9:2780 A.

LOIA also applies to certain insurance coverage supplied by the contractor. Subsection G provides that "any provision in any agreement arising out of operations, services or activities [covered by LOIA] which requires . . . additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the provisions of LOIA shall be null and void and of no force and affect." La. Rev. Stat. 9:2780 G.

Consistent with the express language of Subsection G, courts generally hold that contractual provisions requiring the contractor to extend its insurance coverage to cover the principal's acts of negligence or fault are void under the LOIA because these insurance arrangements frustrate the purpose of the Act. *See e.g. Roberts v. Energy Dev. Corp.*, 235 F.3d 935 (5th Cir. 2000); *Hodgen v. Forrest Oil Corp.*, 87 F. 3rd 1512 (5th Cir. 1996); *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.,* 864 F.2d 1171 (5th Cir. 1989); *Babineaux v. McBroom Rig Bldg. Services, Inc.* 806 F.2d 1282 (5th Cir. 1987); *Amoco Prod. Company v. Lexington Ins. Co., supra.* However, in *Marcel v. Placid Oil Co.,* 11 F.3d 563 (5th Cir. 1994), this court recognized an exception to this rule. We held that, when the principal pays the entire cost of its own insurance coverage by securing an endorsement naming it as an insured in the contract or policy, the purposes of the LOIA are not frustrated, and the insurance coverage is valid and enforceable.

In *Marcel,* Placid Oil Company ("Placid"), the operator of an offshore platform, contracted

with SEE, Inc. ("SEE") to perform workover services on the platform. As part of the agreement, SEE agreed to procure insurance at Placid's expense indemnifying Placid and naming Placid as an additional insured. Plaintiff, Marcel, worked as a roustabout and was injured in a slip and fall on the platform. After being named as defendant, Placid filed a third party complaint against SEE for failing to name Placid as an additional insured under its insurance policy. The district court granted a summary judgment in favor of SEE, determining that the agreement violated LOIA, and Placid appealed.

Relying on *Patterson v. Conoco, Inc.*, 670 F.Supp. 182 (W.D. La. 1987), Placid argued on appeal that SEE's agreement to provide insurance indemnifying Placid and identifying Placid as a named insured did not violate LOIA. In *Patterson,* the court found that LOIA did not render invalid a provision requiring the contractor to extend insurance coverage to the operator where the operator actually paid for the cost of the insurance. *Id.* at 186. In *Marcel,* we adopted the exception created by *Patterson* and stated:

> We now adopt the exception created in *Patterson* as law of this Circuit and find that it has potential application here. The LOIA is aimed at preventing the shifting of the economic burden of insurance coverage or liability onto an independent contractor. If the principal pays for its own liability coverage, however, no shifting occurs. We see no need to prevent such an arrangement in order to give effect to the LOIA. Indeed, agreements such as the one in *Patterson* may be economically desirable in situations where it is less expensive for the independent contractor to add the principal as an additional insured than for the principal to obtain its own insurance on a particular operation. . *Marcel v. Placid,* 11 F.3d 563, 569-570.

Lexington asserts that the exception recognized in *Marcel* (the "Marcel Exception") has no application to this case. Instead, Lexington relies on a recent case decided by the Louisiana First Circuit Court of Appeal, also involving a Lexington policy procured by Pride. *Amoco Prod. Co. v. Lexington Ins. Co., supra*. In *Amoco*, the court permitted Lexington to invoke the provisions of LOIA to invalidate claims by Amoco Production Company and related companies for coverage under

two Lexington policies. The Louisiana First Circuit Court of Appeal determined that the Marcel Exception had no application to the policies at issue in the lawsuit.

In its contract with Amoco, Pride agreed to defend and indemnify Amoco for any and all liability exposure for losses arising out of Pride's operations under the contract, even those occasioned as a result of Amoco's own fault or negligence. The agreement also required Pride to insure its contractual assumption of liability; however, the agreement did not require Pride to name Amoco as an additional assured in Pride's liability policies. In October 1995, three months *after* the accident giving rise to the underlying lawsuit, Pride and Amoco met to discuss having Amoco added as an additional named insured under Pride's primary and excess policies. As a result of this meeting, Amoco was added as an additional named insured under two endorsements. Amoco and Pride agreed that the endorsements were intended to have retroactive application in order to cover the accident involved in the lawsuit.

The First Circuit Court of Appeal found the limitation in the Marcel Exception, preventing its application if any material part of the costs of insuring the indemnitee is borne by the independent contractor precluded the application of the exception to the lawsuit. *Id.* at 680. This was based on its conclusion that Amoco paid an insignificant portion of the premium, in contrast with the amount of coverage provided. *Id.* at 681.

We are satisfied that *Amoco* is distinguishable from the facts of today's case and, therefore, is not helpful in its resolution. First, in *Amoco,* the operator was not named as an additional insured until after the accident occurred, a fact that the court found significant in its analysis of whether the Marcel Exception applied. Here, Samedan procured the coverage long before Rogers' accident. Second and more significantly, in this case Lexington set the premium for the endorsements naming Samedan as an additional insured, and Samedan established that it paid the entire amount of the

premium demanded by Lexington for that coverage. We have no basis to question whether Lexington's valuation of the premium fairly reflects the value of the coverage it willingly extended to Samedan. Based on the Summary Judgment record, we agree with the trial court that the record demonstrates without contradiction that no material part of the costs of insuring Samedan was born by Pride. Thus, the Lexington Endorsements fall within the purview of the Marcel Exception and, consequently, do not violate the LOIA.

## III.

Lexington next challenges the district court's ruling, allowing Samedan to assert a claim for its insurer's, Commercial Underwriters', contribution to the Roger's settlement. Lexington argues that Samedan was not the real party in interest to this claim because it failed to prove that Commercial Underwriters assigned Samedan its right to recover the sum it contributed to the settlement.[2] Lexington raised this issue for the first time on the eve of trial. Although the district court rejected this argument on the merits, it also concluded that Lexington waived its right to make this challenge by its failure to timely object. The district court did not abuse its discretion in holding that Lexington waived this defense.

In *Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100 (5th Cir. 1989) we held that if a defendant fails to assert that a party is not the real party in interest in a timely manner, the argument is waived. Gogolin & Stelter filed suit against First City Bank, Bellaire, N. A. ("First City") alleging that First City mishandled certain documentation relating to the purchase of two Mercedes-Benz automobiles. The cars were purchased by Karn's Auto Imports, Inc. ("Karn's") from Stelter

---

2

Lexington has also challenged Samedan's right to recover $105,593.21 in attorney's fees paid by Pride; however, the district court expressly excluded this sum from its judgment. Thus, there is no merit to Lexington's challenge.

G.m.b.H., a German importer. Because of First City's handling of the paperwork, Karn's was able to obtain the autos and the certificates of title without paying for them.

First City answered the Gogolin & Stelter's complaint by generally denying the allegations. At that time, First City did not challenge Gogolin & Stelter's authority as an assignee of the cause of action owned by Stelter G.m.b.H. First City never moved to join Stelter G.m.b.H. as the real party in interest, and as in the instant case, First City did not discover the lack of assignment during pretrial discovery. First City raised the real party in interest challenge for the first time on motion for directed verdict claiming Gogolin & Stelter failed to prove the assignment at trial. This motion was denied by the district court. We affirmed.

In *Gogolin & Stelter*, we acknowledged that Federal Rule of Civil Procedure 17(a) [3] requires that an action shall be prosecuted in the name of the real party in interest. *Id.* at 102. However, the Rule also contemplates that real party in interest disputes should arise rarely and should be easily resolved. *Id.* These disputes should be evident to a defendant at the onset of suit because the defendant almost always knows whether suit has been filed by the party who "owns" the claim. *Id.* Thus, the Rule also suggests that a defendant must timely object to allow the joinder of the real party in interest. Rule 17 (a) reads in part as follows:

No action shall be dismissed on the ground that it is not prosecuted in the name of the

---

[3]

Rule 17. Parties Plaintiff and Defendant; Capacity

(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest . . . Fed.R.Civ.P. 17(a).

Consistent with this language requiring an opportunity for joinder of the real parties in interest, the defense is waived when it is not timely asserted. *Gogolin & Stelter v. Karn's Auto Imports,* 886 F.2d 100. The objection must be raised when joinder is practical and convenient. *Id.* at 102. "The earlier the defense is raised, the more likely that the high cost of trial preparation for both parties can be avoided if a real party in interest question is determined adversely to a plaintiff." *Id.* Thus, the goal of judicial efficiency is furthered.

As with the defendant in *Gogolin & Stelter,* Lexington has argued that Samedan failed to prove that it was assigned Commercial Underwriter's rights. Lexington raised this issue for the first time the day before trial. The district court was entitled to conclude that this late notice did not afford Samedan a meaningful opportunity to prove the assignment or allow Commercial Underwriters an opportunity to join as a party to the lawsuit.

Although Lexington claims it had no knowledge that Commercial Underwriters contributed to the settlement, Lexington had ample opportunity to conduct discovery on this issue. At trial and on appeal, Lexington argues that Samedan's discovery responses were less than forthright; however, our review of the discovery requests propounded by Lexington shows that it never asked whether other parties contributed to the settlement fund. Lexington had every reason to believe that Samedan had liability insurance and that its insurer would participate in any settlement. Also, Samedan's responses to discovery appear to fairly answer the questions asked, and we glean no attempt by Samedan to obfuscate the identities of the true parties at interest.[4]

---

[4]

The district court's conclusion that Lexington waived this defense is consistent with the law in this circuit and in other circuits as well. *See, e.g., United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d

For the reasons stated above, the district court did not abuse its discretion in concluding that Lexington waived this defense under Rule 17(a) by failing to assert it until the day before trial.

IV.

In its Cross-Appeal, Samedan challenges the district court's failure to award penalties and attorney's fees under Louisiana Revised Statutes 22:658 and 22:1220. We agree with the district court that given the confused state of the law regarding the enforceability of the additional insured endorsement under the LOIA, Lexington's actions did not rise to the level of bad faith. The district court did not err in rejecting Samedan's claim for statutory penalties and damages under La. Rev. Stat. 22:658 and 22:1220.

V.

For the reasons stated above, we find no error in the district court's judgment. Accordingly, the judgment of the district court is AFFIRMED.

---

563 (8th Cir.1996) (failure to raise the assertion that plaintiff was not the real party in interest until pretrial conference constituted a waiver); *Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir. 1982) (failure to raise the assertion that plaintiff was not the real party until16 days prior to trial constituted a waiver); *Chicago & Northwestern Transp. Co. v. Negus-Sweenie, Inc.,* 549 F.2d 47, 50 (8th Cir. 1977); *McLouth Steel Corp. v. Mesta Machine Co.,* 116 F.Supp. 689, 691 (D. Pa. 1953), *affirmed on other grounds,* 214 F.2d 608 (3rd Cir. 1954), *cert. denied,* 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687 (1954)(failure to raise the assertion that the plaintiff was not the real party until 4 days prior to trial constituted a waiver).