# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2024

Lyle W. Cayce
Clerk

—————————

No. 23-30609

—————————

Jon Willis,

*Plaintiff,*

*versus*

Barry Graham Oil Service, L.L.C.,

*Defendant/Third Party Plaintiff—Appellant,*

*versus*

Shamrock Management, L.L.C., *doing business as* Shamrock
Energy Solutions; Aspen Managing Agency, Limited, *on
behalf of* Aspen Syndicate 4711 at Lloyds,

*Third Party Defendants—Appellees.*

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:19-CV-165

———————————————————————

Before Jones, Willett, and Engelhardt, *Circuit Judges.*

Edith H. Jones, *Circuit Judge*:

The first issue presented here is whether the contractor of an offshore
oil platform operator may be required to indemnify a supply vessel, hired by

a vessel brokerage firm, for injury the vessel caused to the contractor's employee. We conclude that the contractor must do so. The counterintuitive result here arises through a series of contracts that required the contractor-Appellee Shamrock Management, L.L.C., to defend, indemnify, and procure insurance coverage for vessel-Appellant Barry Graham Oil Service, L.L.C. The district court read the contracts differently, but our review of the contractual provisions accords with that of Barry Graham. It follows, as a second holding, that the *Marcel* premium paid by the platform operator to cover its indemnity obligations was sufficient to avoid the impact of the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), La. Stat. Ann. 9:2780 (A), (G). Accordingly, the district court's judgment must be REVERSED and the case REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

Appellant Barry Graham Oil Service, L.L.C., operates vessels in the Gulf of Mexico. Barry Graham and Kilgore Marine Services, L.L.C., entered into a Brokerage Agreement to market Barry Graham's vessel services. Kilgore then executed a Master Time Charter Agreement with Fieldwood Energy, L.L.C., to provide Fieldwood with vessel services for its fixed offshore platform, the "VR 261A," in the Gulf of Mexico. Fieldwood, in turn, executed a Master Services Contract ("MSC") with Shamrock Management, L.L.C., to perform work on the platform as a contractor.

Jon Willis was a Shamrock employee on the platform. On February 10, 2018, one of Barry Graham's vessels, the *MS. TAMI*, made a delivery to the Fieldwood platform. Willis used a tag line to guide a crane on the platform as it received a grocery box from the vessel. Because of Barry Graham's alleged negligence, the tag line "suddenly and without warning . . . slipped off the grocery box causing [Willis] to lose his balance

and fall to the deck of [the] platform." Willis sued Barry Graham for his injury.

Barry Graham filed a third-party complaint against, *inter alia,* Shamrock and Shamrock's insurer Aspen,[1] seeking contractual defense, indemnification, and insurance coverage on the basis that these obligations arose from the contracts linking the parties. *See* Fed. R. Civ. P. 14(a). Barry Graham contended that Shamrock and Aspen became liable to it through the three contracts identified above. The parties filed cross-motions for summary judgment. The district court denied Barry Graham's motion and granted Shamrock and Aspen's motion on the sole ground that Barry Graham did not fall within the defense, indemnification, and insurance provisions of the Shamrock-Fieldwood MSC. Willis settled and the district court dismissed his case. Barry Graham timely appealed the district court's adverse judgment on its third-party complaint against Shamrock and Aspen.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment, including on cross-motion, *de novo. See Weeks Marine, Inc. v. Standard Concrete Prods., Inc.*, 737 F.3d 365, 368 (5th Cir. 2013). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] Under the MSC, Fieldwood required Shamrock to obtain indemnification insurance, which it acquired from Aspen Syndicate 4711 at Lloyd's. Fieldwood paid Shamrock's insurance premium.

No. 23-30609

## DISCUSSION

On appeal, the only issues properly before this court are the interpretation of three relevant contracts and the impact of anti-indemnity statutes.[2] We discuss each issue in turn.

### I. Contract Interpretation

The Shamrock-Fieldwood MSC is governed by Louisiana law. As a claimed beneficiary under that regime, Barry Graham had the burden to prove the existence of contractual defense and indemnity agreements. LA. CIV. CODE ANN. art. 1831. Further, agreements to indemnify against an indemnitee's own negligence are strictly construed against the indemnitee. *Amoco Prod. Co. v. Forest Oil Corp.*, 844 F.2d 251, 253 (5th Cir. 1988) (citing *Polozola v. Garlock*, 343 So. 2d 1000, 1003 (La. 1977)). Although the Brokerage Agreement and Time Charter Agreement must ultimately be consulted, the language that principally governs this issue is located in the MSC. We conclude that the MSC obliges Shamrock to defend, indemnify, and insure Barry Graham because (1) Barry Graham is covered by the plain terms of the relevant contractual provisions, and (2) the contractual trigger to those obligations, that there was "cross indemnification . . . substantially similar to" Shamrock's, was satisfied.

---

[2] Shamrock/Aspen raise several potential insurance defenses if coverage is awarded to Barry Graham. The district court declined to address the issues as moot after it ruled for Shamrock/Aspen at summary judgment. This court need not review questions of insurance coverage in these circumstances; we leave those for the court on remand. *See Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("[A] court of appeals sits as a court of review, not of first view.").

## A. Barry Graham is within a "Third Party Contractor Group" under the MSC.

Section 13(f)(i) of the MSC committed Shamrock, the "Contractor," "to release, indemnify, protect, defend, and hold harmless such other Third Party Contractor(s) (and any such Third Party Contractor Group) from and against any and all claims for (1) the injury, illness or death of any member of Contractor Group . . . ." The Contractor Group includes Shamrock and its employee Willis. Shamrock further agreed, in section 13(f)(ii), to "support its mutual indemnity obligations . . . with insurance . . . for the benefit of such Third Party Contractor(s) (and any such Third Party Contractor Group) . . . ." Shamrock was therefore obliged to defend, indemnify, and procure insurance covering Third Party Contractors and Third Party Contractor Groups for the personal injury claims Willis brought against them.

Section 13(a)(v) of the MSC defines a "Third Party Contractor" as "any other contractor . . . used or employed by [Fieldwood] in connection with the Work." The following subsection, 13(a)(vi), defines "Third Party Contractor Group" as "Third Party Contractor[s] . . . and their respective subcontractors of any tier. . . ." Kilgore, as the broker of vessel services to Fieldwood, appears to be a Third Party Contractor, and by definition, Barry Graham would be part of a Third Party Contractor Group.

Shamrock and Aspen dispute, however, that Kilgore was "used or employed . . . in connection with the Work." Instead, they contend that the "Work," another contractually defined term, "had nothing to do with" Fieldwood's contracting with Kilgore. We disagree. In section 2 of the MSC, the "Work" is the work to be performed by the contractor, Shamrock, as further defined in Appendix I. Appendix I has a checklist of Shamrock's

possible services for Fieldwood.    One of the selected services was "CRANES: Operator/Rigger."

Willis was working as a crane rigger on Fieldwood's platform when he was injured while offloading Barry Graham's vessel.  Because Shamrock's work involved crane rigging and those services were used in offloading the vessel chartered by Kilgore for Fieldwood, Fieldwood used Kilgore "in connection with" Shamrock's work.  Kilgore is therefore plainly a Third Party Contractor under the MSC, rendering Barry Graham just as plainly part of Kilgore's Third Party Contractor Group.  But there is another criterion for coverage of Barry Graham by Shamrock's indemnity obligations.

**B. Cross Indemnities Trigger Shamrock's Obligations to Barry Graham.**

Shamrock's defense, indemnity, and insurance obligations apply under section 13(f)(i) only "[t]o the extent . . . Third Party Contractor(s) execute cross indemnification . . . substantially similar to those contained in this section . . . ."  The MSC states that if this condition is met, then Shamrock agrees to extend its indemnities to "such other Third Party Contractor(s) (and any such Third Party Contractor Group)."  To satisfy this reciprocity requirement, the contract states only that Third Party Contractors must "execute cross indemnification . . . substantially similar" to Shamrock's—not that whole Third Party Contractor Groups must do so. Instead, if the Third Party Contractor executes the requisite cross indemnities, then Shamrock's obligations reach both the Third Party Contractor and its Group.  Here, for Shamrock's obligations to extend to Barry Graham, only Kilgore is required to "execute cross indemnification . . . substantially similar to" Shamrock's indemnities.

Section 12(g) of the Kilgore-Fieldwood Time Charter Agreement describes Kilgore's obligations as essentially identical to Shamrock's.  In section 12(g)(i), Kilgore agreed to defend and indemnify any "Third Party

Contractors (and any such Third Party Contractor Group)" for injuries to members of the "Owner Group." In section 12(g)(ii), Kilgore agreed to obtain insurance coverage to that end. The Owner Group includes Kilgore and "the vessel and its owners and operators," language encompassing Barry Graham's employees. Therefore, Kilgore is obliged to defend, indemnify, and insure Third Party Contractors and Third Party Contractor Groups for any tort claims brought against them by Barry Graham employees, just as Shamrock agreed to do for its employees' tort claims.

Further, to satisfy the cross indemnity reciprocity required by the MSC, Shamrock must be a Third Party Contractor under the Kilgore-Fieldwood Time Charter Agreement. And indeed it is. The Time Charter Agreement explains that Third Party Contractors include "any other contractor or subcontractor of any tier . . . used or employed by Charterer [Fieldwood] to provide equipment or services to Charterer [Fieldwood]." Kilgore's obligations are actually broader than Shamrock's because the Time Charter Agreement does not require other contractors to be used "in connection with" Kilgore's work in order to be covered by Kilgore's defense, indemnification, and insurance obligations.

In sum, Kilgore's obligations to defend, indemnify, and insure Shamrock and its subcontractors for their torts against Kilgore and Barry Graham employees constitute "cross indemnification . . . substantially similar to" Shamrock's obligations to defend, indemnify, and insure Kilgore and its subcontractor Barry Graham for their torts against Shamrock employees. Shamrock was required to defend and indemnify Barry Graham according to the MSC.

## II. Louisiana Oilfield Anti-Indemnity Act (LOAIA)

All parties agree that the Outer Continental Shelf Lands Act ("OCSLA") applies to this dispute. *See also Pac. Operators Offshore, LLP v.*

*Valladolid*, 565 U.S. 207, 132 S. Ct. 680 (2012). The OCSLA adopts the laws of the state adjacent to the relevant part of the outer Continental Shelf as surrogate federal law. 43 U.S.C. § 1333(a)(2); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358–60, 89 S. Ct. 1835, 1838–39 (1969). This adoption of state law is subject to three conditions:

> (1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

*Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

In this case, the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), applies as surrogate federal law under the OCSLA. All three *PLT* conditions are satisfied. The MSC focuses on Shamrock's work on the Fieldwood platform, an OCSLA situs. *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788–89 (5th Cir. 2009) (en banc). Federal maritime law does not "apply of its own force" because the contract is "one to provide services to facilitate the drilling or production of oil and gas on navigable waters," and the MSC does not "provide" nor "do the parties expect that a vessel will play a substantial role" in its completion. *In re Larry Doiron, Inc.*, 879 F.3d 568, 575–76 (5th Cir. 2018) (en banc). Finally, this court has repeatedly held that the LOAIA is consistent with federal law, including the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50. *See Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1528–30 (5th Cir. 1996) ("We find nothing in the [LOAIA] inconsistent with federal law."); *see also Grand Isle Shipyard*, 589 F.3d at 789. Accordingly, the only remaining statutory inquiry is whether the LOAIA voids Shamrock's obligations to Barry Graham.

The LOAIA "voids oilfield agreements to the extent the agreements contain provisions for indemnification for losses caused by negligence or fault of the indemnitee." *Marcel v. Placid Oil Co.*, 11 F.3d 563, 569 (5th Cir. 1994); *see* La. Stat. Ann. § 9:2780(A), (G). The LOAIA ordinarily voids agreements in which "the employer of the injured plaintiff [is] required to provide insurance coverage indemnifying a third party." *Marcel*, 11 F.3d at 569. But this court recognized an exception in *Marcel* when an indemnitee fully pays the indemnitor's insurance premiums for the indemnitee's coverage. *Id.* at 569–70.

Whether the *Marcel* exception to the LOAIA applies here turns on two questions: (1) whether, as a matter of contract interpretation, Fieldwood's payment of the *Marcel* premium was intended to cover Shamrock's obligations to Barry Graham, and (2) whether, as a matter of first impression in this court, a third party contractor that does not pay the *Marcel* premium can avail itself of its principal's payment of a *Marcel* premium made with the intent to cover that third party contractor.

Beginning with the first question, section 2 of Exhibit E of the MSC contains the relevant "Louisiana Specific Provision[]" that is "intended to comply with the provisions of *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994)." In relevant part, Shamrock and Fieldwood agreed that "Company [Fieldwood] (on its own behalf, and on behalf of the Company Group) and Contractor [Shamrock] . . . may pay to each other's insurer the premium required to extend all of their insurance policies to include coverage for Company's and Contractor's respective indemnities as required by this Contract."

Appellees Shamrock and Aspen argue that Barry Graham is not part of the Company Group and that Fieldwood could therefore not pay the *Marcel* premium on Barry Graham's behalf. But even assuming that Barry

Graham is not part of the Company Group, Fieldwood and Shamrock agreed that they could pay *Marcel* premiums to one another "to extend all of their insurance policies to include coverage for [their] respective indemnities as required by this Contract." As explained, Shamrock's indemnities under the MSC included obligations to Barry Graham. Even if Fieldwood did not pay the *Marcel* premium "on behalf of" Barry Graham as part of the Company Group, Fieldwood still paid the premium to allow Shamrock's coverage to extend to Barry Graham as one of Shamrock's contractually required indemnities. That Fieldwood paid the *Marcel* premium only on behalf of itself and the Company Group does not suggest that the broad language allowing payment of the *Marcel* premium "to extend all of their insurance policies to include coverage for [their] respective indemnities required by this Contract" was similarly limited. Therefore, as a matter of contract interpretation, Fieldwood intended to pay the *Marcel* premium to make enforceable Shamrock's obligations to Barry Graham under the LOAIA.

We hold that a third party contractor that does not itself pay a *Marcel* premium can nevertheless rely on a *Marcel* premium paid by its principal to cover that third party contractor. This holding hews closely to the rationale of *Marcel*. There, this court explained that the LOAIA is "aimed at preventing the shifting of the economic burden of insurance coverage or liability onto an independent contractor." *Id.* at 569. But when "the principal pays for its own liability coverage . . . no shifting occurs." *Id.* The *Marcel* court "s[aw] no need to prevent such an arrangement to give effect to the [LOAIA]" except when "any material part of the cost of insuring the indemnitee is borne by the independent contractor procuring the insurance coverage." *Id.* at 569–70. There is no shifting of the economic burden at which the LOAIA is aimed when the principal pays the full premium for its contractor, so long as the indemnitor bears no part of that cost.

10

Other Fifth Circuit and district court cases applying the *Marcel* exception agree that the critical inquiry is whether the indemnitor bears any part of the cost of insuring the indemnitee. *See, e.g.*, *Hodgen*, 87 F.3d at 1529 ("The fact that the premiums did not vary according to the identity of the additional insured does not change the fact that these premiums were paid, and that [the indemnitee] paid them."); *Delozier v. S2 Energy Operating, LLC*, 500 F. Supp. 3d 514, 526 (E.D. La. 2020) ("When *Marcel* payments are made, the indemnity clauses of a contract are enforceable."). Today's holding also accords with at least two published Louisiana district court opinions applying *Marcel* to facts essentially identical to those in this case. *See Durr v. GOL, LLC*, 393 F. Supp. 3d 476, 488–89 (E.D. La. 2019); *Borman v. Shamrock Energy Sols., LLC*, 421 F. Supp. 3d 382, 388–91 (E.D. La. 2019). And it similarly accords with at least two unpublished Louisiana district court opinions. *See B J Servs. Co., USA v. Thompson*, No. 6:08-510, 2010 WL 2024725, at *5–8 (W.D. La. May 14, 2010); *Richard v. Island Operating Co.*, Nos. 11-0419, 11-2084, 2015 WL 403155, at *5 (W.D. La. Jan. 27, 2015).

That said, Appellees raise one Louisiana state court of appeals decision, which stated in passing that "the *Marcel* Exception does not extend to third party beneficiaries . . . who do not pay for coverage under the indemnitor's policy." *Jefferson v. Int'l Marine, LLC*, 224 So. 3d 50, 55 (La. Ct. App. 2017). This statement was dictum, as the district court in *Borman* explained. 421 F. Supp. 3d at 388–91. That dictum is also in tension with this court's *Marcel* exception jurisprudence, as explained in *Borman*. *Id.* Further, even taking it at face value, this statement from *Jefferson* does not necessarily speak to the facts of this case. The *Jefferson* court is generally correct that a third party contractor is not automatically covered by its principal's payment of the *Marcel* premium. But this case involves a principal that paid the *Marcel* premium expressly to extend the coverage over the third party contractor.

No. 23-30609

Here, no part of the cost of insuring Barry Graham is borne by Shamrock because Fieldwood paid the premium to extend coverage over all of Shamrock's "indemnities as required by" the MSC. Therefore, the *Marcel* exception applies and the LOAIA does not void Shamrock's contractual defense, indemnity, and insurance obligations to Barry Graham.

The judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.