IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2008

Charles R. Fulbruge III
Clerk

No. 08-40446
Summary Calendar

In the Matter of: NORMAL MICHAEL MILLER; SHERI PRATER MILLER

Debtors

-----------------------------------------------------

NORMAL MICHAEL MILLER; SHERI PRATER MILLER

Appellants

v.

NEIL LEWIS; SHARON LEWIS

Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CV-193

Before WIENER, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellants, Norman and Sheri Miller, appeal the district court's decision to affirm the bankruptcy court's ruling that a claim by Appellees, Neil and Sharon Lewis (the "Lewises"), is not dischargeable in bankruptcy. We affirm.

## I. FACTS AND PROCEEDINGS

This dispute arises out of fraudulent activities perpetrated by Norman Miller[1] against the Lewises and other investors. Over a fifteen-month period, Miller stole $2.65 million from SDIC, an investment group headed by Neil Lewis. Miller held himself out as a registered agent and represented that he would invest money raised from investors in a high-reward trading program; he, instead, misappropriated the funds for personal use. Unbeknown to investors, Miller had previously been convicted in Texas for securities fraud and theft.

The Lewises eventually discovered the fraudulent scheme and brought suit in Arizona federal district court in June 2000. On May 30, 2002, the parties executed a settlement agreement. On June 19, 2002, the district court entered a stipulated judgment (the "Arizona Judgment"). Under the terms of the judgment, Miller agreed to pay $9 million for "breach of contract, conversion, constructive trust, fraud and breach of fiduciary duty." The judgment further stated that "the Millers defrauded Lewis" and the judgment, "in its entirety, is not dischargeable under any provision of the United States Bankruptcy Code." A settlement agreement was then signed as a discharge of the Arizona Judgment, under which Miller agreed to pay the Lewises $3 million immediately and a further $1.5 million in installments. Failure to pay the remaining installments entitled the Lewises to enforce the $9 million judgment.

---

[1] Sheri Miller's participation is immaterial for this appeal and all references are to Norman Miller.

During the pendency of the Arizona Judgment, Miller was being investigated for wire fraud in South Carolina. The Department of Justice had filed a criminal complaint against Miller on May 14, 2002. Miller was arrested and pled guilty, agreeing to pay $17 million. Miller did not disclose this to the Lewises nor did he inform them of the criminal investigation when the Arizona Judgment was entered. Miller was aware that he could not fulfill the remaining $1.5 million obligation to the Lewises and, in fact, the initial $3 million payment was the product of another fraudulent scheme similar to the one that had ensnared the Lewises. Miller made no further payments on the settlement.

On November 22, 2004, Miller filed a petition for relief under Chapter 7 of the Bankruptcy Code in the bankruptcy court for the Eastern District of Texas. He listed the Arizona Judgment as a "disputed" judgment for $6 million and sought its discharge. On March 16, 2005, the Lewises filed claims asserting that the balance was over $7.5 million in principal and interest and that Miller could not discharge the obligation. On February 21, 2007, the bankruptcy court found that the Arizona Judgment was not dischargeable. Miller appealed.

On March 21, 2008, the district court, agreeing with the bankruptcy court, affirmed. Miller now appeals, arguing five grounds for reversal. He asserts that the district court erred in affirming the bankruptcy court because: 1) the Lewises lacked standing to sue; 2) the Lewises failed to meet the elements of § 523(a)(2)(A) of the Bankruptcy Code; 3) the Lewises did not meet the elements of § 523(a)(4) of the Bankruptcy Code; 4) the Lewises failed to meet the elements of § 523(a)(6) of the Bankruptcy Code; and 5) the Arizona federal district court could not make a determination that a debt was nondischargeable.

## STANDARD OF REVIEW

"We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." In re Gerhardt, 348 F.3d 89, 91 (5th Cir. 2003). A bankruptcy court's findings of fact are reviewed for clear error while its conclusions of law are reviewed de novo. Id. Mixed questions of law and fact are reviewed de novo. In re Quinlivan, 434 F.3d 314, 318 (5th Cir. 2005). Findings of fact will only be reversed if, "on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." In re Allison, 960 F.2d 481, 483 (5th Cir. 1992).

## A. Real Party in Interest

Miller argues that the Lewises have no standing to pursue this dischargeability action. Miller asserts that he only took money from SDIC, not the Lewises, and is therefore only liable to that entity. Miller does not, however, dispute that he did not raise this issue in the Arizona proceedings.

The Lewises respond that this argument is really a collateral attack on the Arizona Judgment and an attempt to void that obligation. Furthermore, the Lewises state that, as the parties to whom payment is due under the Arizona Judgment, they are the only persons who can bring suit.

While Miller styles his argument as one of standing, both the bankruptcy court and the district court analyzed the issue in terms of real party in interest under Rule 17. FED. R. CIV. P. 17. Both found this argument waived.

Rule 17 governs the determination of who can properly assert a claim. "An action must be prosecuted in the name of the real party in interest." Id. "The

real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." Wieburg v. GTE Sw. Inc., 272 F.3d 302, 306 (5th Cir. 2001) (quotation omitted). Both the district court and the bankruptcy court were correct in analyzing Miller's first claim of error as a real party in interest argument. The facts and the law support this conclusion. The Lewises prosecuted the Louisiana suit in their individual capacity. They are therefore the real parties in interest even though a large part of the Arizona Judgment was ultimately distributed to the SDIC investors. The bankruptcy court, as affirmed by the district court, did not err in holding that the Lewises were the real parties in interest.

Even accepting arguendo that the Lewises were not the proper parties to prosecute the action, the argument is waived. Disputes over the real party in interest "should be evident to a defendant at the onset of suit because the defendant almost always knows whether suit has been filed by the party who 'owns' the claim." Rogers v. Samedan Oil Corp., 308 F.3d 477, 483 (5th Cir. 2002). Failure to assert the defense in a timely manner constitutes waiver. Id. As the district court pointed out, Miller never raised the standing or real party in interest issue in the Arizona lawsuit and failed to timely assert the defense in bankruptcy court. While the Lewises initiated their action in bankruptcy court in March of 2005, it was not until the day before trial was set to start that Miller urged the real party in interest argument. See id at 482–83 (finding the real party in interest argument waived when not raised until the eve of trial). Neither the bankruptcy court nor the district court erred.

B. Section 523(a)(2)(A) Dischargeability

Section 523(a)(2)(A) states in relevant part that "[a] discharge under . . . this title does not discharge an individual debtor from any debt . . . to the extent

obtained by -- false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Miller argues that the district court erred in affirming the bankruptcy court's determination that the Arizona Judgment was not dischargeable pursuant to § 523(a)(2)(A)'s fraud exception because the judgment also included dischargeable causes of action and did not allocate the amounts owed for each cause. Also asserting that § 523(a)(2)(A)'s nondischargeability effect should be limited to the amount actually stolen, Miller argues that the Lewises are only entitled to the initial amount invested. Miller further assails the underlying findings of the Arizona court, claiming that the Lewises were not justified in relying upon his representations.

The bankruptcy court stated that the Arizona Judgment represented money obtained by Miller through false pretenses, false representation, and actual fraud. The district court affirmed, finding that the full amount of the Arizona Judgment was not dischargeable because § 523(a)(2)(A) excepts from discharge any debt arising from the debtor's fraud. The finding was based on the fact that Miller obtained both the original investments and the Arizona settlement through fraud, having no intention of paying the Lewises. Applying Arizona law on issue preclusion, the district court also found that Miller was barred from re-litigating the issue of justifiable reliance.

"Despite the more general purpose of the bankruptcy code, which is to give debtors a fresh start, § 523(a)(2)(A) captures a competing principle." In re Quinlivan, 434 F.3d at 319. Congress intended § 523(a)(2)(A) to protect victims of fraud over the defrauding debtors. Cohen v. de la Cruz, 523 U.S. 213, 223 (1998). As a result, § 523(a)(2)(A) "does not impose any limitation on the extent to which 'any debt' arising from fraud is excepted from discharge. . . . Once it

is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." Id. at 219. Allowing the fraudulent debtor "to discharge any liability for losses caused by his fraud in excess of the amount he initially received, [would be] leaving the creditor far short of being made whole." Id. at 223.

Miller's argument that the Lewises should only recover the amount invested is without merit. As the Supreme Court clearly outlined in Cohen, no such restitutionary cap applies to § 523(a)(2)(A). Furthermore, as the Arizona Judgment made clear and the bankruptcy court found, the damages suffered by the Lewises as a result of Miller's fraud extend far beyond the initial investment.

Miller is also precluded from lodging a collateral attack on the Arizona Judgment by arguing that it does not delineate between the various causes of action arising out of Miller's fraud or that the Lewises did not justifiably rely on his representations. Both grounds are foreclosed by issue preclusion. Arizona law applies to determine the preclusive effect of the Arizona Judgment. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508–509 (2001). The Arizona Supreme Court has stated that the will of the parties controls, noting that,

> Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment. . . . However, in the case of a judgment entered by confession, consent or default, none of the issues is actually litigated. A judgment entered by stipulation is called a consent judgment, and may be conclusive, with respect to one or more issues, if the parties have entered an agreement manifesting such intention. . . . If the parties to this action had intended the . . . dismissal to be binding as to certain factual issues, and if their

intention was reflected in the dismissal, we would enforce the intent of the parties and collateral estoppel would apply.

Chaney Bldg. Co. v. City of Tucson, 716 P.2d 28, 30 (Ariz. 1986) (internal citations omitted). As the bankruptcy court found—and Miller does not dispute—the parties specifically allocated the full amount of the $9 million Arizona Judgment to nondischargeable debt. The bankruptcy court also found that the Lewises are not sophisticated business people with investment expertise. Further, having admitted to defrauding the Lewises, Miller cannot now re-litigate the issue.

Neither the bankruptcy court nor the district court erred in finding that the Arizona Judgment was a nondischargeable debt under § 523(a)(2)(A).

## C. Remaining Grounds for Dischargeability

Having found the Arizona Judgment nondischargeable under § 523(a)(2)(A), Miller's remaining arguments need not be addressed.

### CONCLUSION

The judgment of the district court is AFFIRMED.