# United States Court of Appeals for the Fifth Circuit

—————

No. 25-30010

—————

United States Court of Appeals
Fifth Circuit

**FILED**
February 9, 2026

Lyle W. Cayce
Clerk

In re: In the Matter of the Complaint of Aries Marine Corporation, and the Ram XVIII for Exoneration from or Limitation of Liability

Aries Marine Corporation, *for Exoneration from or Limitation of Liability*,

*Petitioner—Appellant*,

*versus*

United Fire & Safety, L.L.C.,

*Defendant/Third Party Defendant—Appellee*.

—————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-10850,
2:19-CV-13138

—————————————————

Before Dennis, Graves, and Duncan, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Fieldwood Energy was conducting repairs on its offshore platform located off the coast of Louisiana. To complete this work, Fieldwood contracted with United Fire and Safety for fire watch services, and separately chartered a liftboat from Aries Marine. After the liftboat listed and capsized,

No. 25-30010

a United Fire employee filed a personal injury claim as part of the limitation of liability action that followed. Aries sought indemnification from United Fire pursuant to the cross-indemnification provisions in the Fieldwood-United Fire contract. The district court denied Aries' summary judgment motion, finding that the contract was not maritime in nature and Louisiana law applied to invalidate the indemnity provisions. For the reasons that follow, we agree that the contract is nonmaritime and we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2018, offshore platform operator Fieldwood Energy LLC ("Fieldwood") planned to conduct repair work on its platform located on the Outer Continental Shelf off the coast of Louisiana. To facilitate the work, Fieldwood chartered the L/B RAM XVIII ("RAM XVIII" or "liftboat"), a liftboat owned and operated by Appellant Aries Marine ("Aries").[1] The RAM XVIII provided housing, meals, deck and office space, and construction and crane support for Fieldwood contractors who would be removing and replacing the platform's metal deck grating. Among these contractors was Appellee United Fire and Safety LLC ("United Fire") employee Glenn Gibson, who provided gas freeing and fire watch services.[2]

On November 18, 2018, the RAM XVIII's port leg punched through and penetrated the seabed it rested upon, causing the vessel to list and capsize while the contractors slept aboard.

_____

[1] Aries and Fieldwood entered into a Master Time Charter Agreement dated November 1, 2013, "to provide chartered vessels from time to time to [Fieldwood]." The agreement included indemnity and cross-indemnity provisions.

[2] Additional contractors included employees of Facilities Consulting Group and Fluid Crane and Construction Inc., parties that are not subject to this appeal.

No. 25-30010

As a result of the incident, Aries filed a limitation of liability action. Gibson filed personal injury claims in the action. Aries asserted a third-party complaint against United Fire for defense, indemnity, and additional insurance. According to Aries, a 2013 Master Services Contract ("MSC") executed between Fieldwood and United Fire—which included indemnity and cross-indemnity provisions—obligated United Fire to defend and indemnify Aries.[3] United Fire argued that the indemnity provision was unenforceable according to state law. Aries and United Fire each filed summary judgment motions on the issue of whether the MSC was a maritime contract.

The district court granted summary judgment to United Fire and denied Aries' motion, finding that the MSC was nonmaritime and Louisiana law applied to bar defense and indemnity contract provisions for personal injury claims.

Aries filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), which was denied. Aries filed a second motion for reconsideration, arguing that an intervening change in the law compelled a different summary judgment ruling. The district court disagreed and again denied the motion.

This appeal followed.

_____

[3] As Aries explained during oral arguments, the cross-indemnity provisions contained in Fieldwood's contracts with United Fire and Aries serve to "cut[] Fieldwood out of the equation," and the contractors may seek indemnity from each other.

No. 25-30010

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 355 (5th Cir. 2012). Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 327 (5th Cir. 2023).

## III. DISCUSSION

Because the incident occurred on a platform fixed to the seabed off the Louisiana coast, this dispute falls within the purview of the Outer Continental Shelf Lands Act ("OCSLA"). *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969). OCSLA adopts the laws of the state adjacent to the relevant part of the outer continental shelf as surrogate federal law. 43 U.S.C. § 1333(a)(2); *see also Rodrigue*, 395 U.S. at 358–60. This is subject to three conditions. "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

Louisiana is the state adjacent to Fieldwood's platform. The Louisiana Oilfield Anti-Indemnity Act ("LOAIA") "voids oilfield agreements to the extent the agreements contain provisions for indemnification for losses caused by negligence or fault of the indemnitee."

4

No. 25-30010

*Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149, 156 (5th Cir. 2024) (quoting *Marcel v. Placid Oil Co.*, 11 F.3d 563, 569 (5th Cir. 1994)); *see* LA. STAT. ANN. § 9:2780(A). If the contract is nonmaritime, LOAIA applies and voids the indemnity provisions.

However, if a contract is a maritime contract, federal maritime law applies, and the indemnity provisions are valid. *Hoda v. Rowan Cos., Inc.*, 419 F.3d 379, 380 (5th Cir. 2005). Our two-part test to determine whether a contract is maritime asks: (1) "is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?" and, if yes, (2) "does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?" *In re Larry Doiron, Inc.*, 879 F.3d 568, 576 (5th Cir. 2018) (en banc). Both parties agree that the answer to the first question is yes.

## A

We first address the first half of *Doiron*'s second question: whether the parties' contracts provided that a vessel would play a substantial role in the completion of the contract. The focus of this inquiry "should be on whether the contract calls for substantial work to be performed from a vessel." *Doiron*, 879 F.3d at 573. We conclude that the Fieldwood-United Fire MSC does not.

For this analysis, we consider both the MSC and a "Work to a Contractor" job order email sent from Fieldwood's "Company Man" Clarence Oliva to United Fire, memorializing the work to be done on the platform.[4]

---

[4] The MSC stated that Fieldwood "may request [United Fire] (either in writing or verbally followed up by a confirmation email or facsimile) to perform work, deliver goods, or render services hereunder within the boundaries of the United States and the outer

No. 25-30010

The only notable mention of a vessel in the MSC is for purposes of transportation. However, "[o]ur analysis of 'substantial' ignores the need for vessels to transport equipment and crew." *In re Crescent Energy Servs., L.L.C.*, 896 F.3d 350, 360 (5th Cir. 2018) (citation omitted).

Aries contends that "[t]he work, goods, and services contemplated are not defined, but Appendix I of the United Fire Contract is a Checklist that directs the Contractor to 'check the box next to each type of product(s) and / or service(s) that your company provides,'" and a section related to "platforms" was not checked. Aries reasons that United Fire was therefore not limited to performing services on the fixed platform. Aries also argues that "based on the terms of [United Fire's] contract with Fieldwood and its own obligations as an employer, [it] expected or should have expected that a vessel could play a substantial role in the completion of that contract."

These arguments are unavailing. The fact that United Fire was not limited to providing services on a fixed platform according to its general MSC does not change the fact that it *was* contracted—via a specific job order—to provide services on a fixed platform in this case. And the *Doiron* rule does not require that United Fire "should have expected" a vessel to play a substantial role—we have to ask whether the parties *do* have that expectation.

The other relevant contract document is the job order email requesting that personnel arrive in time to depart for a job on November 16, 2018. Through the job order, United Fire agreed to provide "fire watch" services, which "consist[] of a United Fire employee, such as Glenn Gibson, testing an area where welding work is to be performed by using a gas detector." The job order email makes no mention of the RAM XVIII or a

_____

continental shelf of the Gulf of Mexico." Fieldwood could submit work requests to United Fire "in the form of a job order."

6

vessel. Testimony from a Fluid Crane contractor further clarified that "the crew—nobody was aware they were getting on a lift boat. . . . [I]t would have stated it in the email."

The cases cited by Aries in support of its argument contain very different agreements. *See Crescent*, 896 F.3d at 360–61 (job bid letter for work consisting of plugging and abandoning oil wells described three vessels that would be used, and therefore the parties "anticipated [a vessel] would be indispensably involved in performance of the contract"); *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 674, 681 (5th Cir. 2019) (marine construction company indicated the need for a barge and tugboat for a dock construction project; the contract "proposal show[ed] that the parties expected the barge to play a critically important role"); *Earnest v. Palfinger Marine U S A , Inc.*, 90 F.4th 804, 813 (5th Cir. 2024) (contract for maintenance and repair of life boats was maritime in nature). In contrast to those cases, neither the MSC nor the job order between Fieldwood and United Fire establish a "direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat." *Earnest*, 90 F.4th at 813.

### B

If a contract does not outline a vessel's use, courts may go on to consider whether the parties expected a vessel to play a substantial role.

We are guided in this analysis by this court's recent case, *Genesis Energy, L.P. v. Danos, L.L.C.*, 152 F.4th 648 (5th Cir. 2025). There, a platform owner contracted with an energy service provider to conduct repairs on its platform located off the coast of Louisiana. *Id.* at 651. The platform owner chartered a vessel owned by a third-party company. *Id.* An employee with the energy service provider suffered injuries while moving between the vessel and the platform and sued all three parties. *Id.* The platform owner filed a crossclaim against the energy service provider, seeking

indemnification according to an existing master services agreement. *Id.* The district court found that the parties' contract was not maritime in nature, and an appeal followed. *Id.* at 651–52.

The panel applied the *Doiron* test and looked at the master services agreement, the job plan memorializing an oral work order for the repairs, and a vessel bid document, concluding that the contracts did not establish that a vessel would play a substantial role in the completion of the repairs. *Id.* at 653–54.

The court then reviewed the parties' expectation evidence. *Id.* at 654. Testimony established that both companies knew the vessel would be used as living quarters. *Id.* Nonetheless, the vessel was not a necessary work platform because the parties only anticipated that the vessel would house equipment that would be transferred to the platform, and "[t]hat role is insubstantial." *Id.* at 656. The panel also described the vessel's functions in transportation, housing the crew, and serving as a space for meals and safety meetings as "ancillary" and "legally insufficient." *Id.* at 657.

With this case in mind, we turn now to Aries' and United Fire's expectation evidence.

Aries offers evidence that Fieldwood anticipated use of the liftboat for transportation, crane work, and lodging. Aries points to the fact that Fieldwood was spending significant amounts of money to charter the RAM XVIII. Additionally, in an email exchange between Aries and Fieldwood, an Aries employee offers two positions where the RAM XVIII can be placed, and Fieldwood engineer Mike LeBlanc answers that he "would prefer option 2." On the same day, LeBlanc writes an email to the Fugro project managers regarding the "plan to mobilize the L/B Ram XVIII."

This evidence does show that Fieldwood anticipated the use of the RAM XVIII, but does not establish United Fire's expectations. Only Aries

was party to the email communications and to its contract with Fieldwood, which does not help our inquiry. *See Genesis Energy*, 152 F.4th at 654 n.3 ("The [vessel] bid document . . . does not shed much light on the 'expectations of the parties,' as only one of the relevant parties, [the platform owner], was a party to the bid document.").

Aries next argues that the actual use of the liftboat was substantial and it provided essential services. Aries posits that "[t]he time spent by Mr. Gibson on the RAM XVIII was also considerable," as he spent "at least half" of his time on location aboard the liftboat, and it was used as living quarters and also provided construction and crane support. Fieldwood "Company Man," Mr. Oliva, testified that the crew would not have been able to do their work without the crane support of the RAM XVIII. This, says Aries, makes the RAM XVIII "fundamental to the successful execution of the United Fire Contract."

Gibson testified that prior to starting the job, he did not know the work location, what the job would involve, about work involving a crane, or where he would stay overnight. Regardless, Aries' arguments as to time spent on the liftboat are unavailing. As *Genesis Energy* concluded, the liftboat's service in housing the crew and as a space for meals and safety meetings is "ancillary" and "incidental," and these functions do not give the liftboat a substantial role. 152 F.4th at 657. Additionally, the fact that the vessel was instrumental in helping with crane support is irrelevant as to United Fire, who was contracted to provide fire watch services and not crane services.

Aries tries one other argument in this vein, explaining that fire watch services are customary in the maritime industry, and therefore United Fire should have expected the use of a vessel. In support, Aries notes that the *Earnest* panel concluded that *Doiron* "allows a finding that a contract is maritime when a vessel is not the object of the contract." While this is true,

the work that is the subject of the contract must still anticipate the substantial use of a vessel. That fire watch services *could* be maritime work is not enough to show that the use of a vessel was contemplated by United Fire in this case.

Aries additionally contends that United Fire made a "self-serving argument" that the use of the liftboat was not expected or substantially involved in Gibson's work, and that it did not support this argument "by any affidavit, declaration, or reference to deposition testimony or record evidence." Both United Fire and Aries moved for summary judgment, and each have the burden of demonstrating that there is no genuine issue of material fact and are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). United Fire pointed to the MSC and the job order email as lacking an expectation that a vessel would be utilized. Aries' evidence, by contrast, does not point to an issue of material fact that United Fire expected a vessel to perform a substantial role in performance of its fire watch services, and Aries cannot carry its summary judgment burden.

## IV. CONCLUSION

Fieldwood expected that the liftboat would play a substantial role in its platform repairs. But United Fire did not. Aries is unable to demonstrate how Fieldwood and United Fire could have formed a maritime contract despite this one-sided expectation. Our cases have made clear that a vessel's substantial role must be a shared expectation. *See Crescent*, 896 F.3d at 359 ("We must remember that the contracting *parties'* expectations are central." (emphasis added)); *Genesis Energy*, 152 F.4th 648, 654 n.3 (favorably citing district court language that the "expectations of the parties" inquiry requires a shared expectation that a vessel would play a substantial role). Because the parties did not share an expectation that a vessel would play a substantial role in the completion of the contract, *Doiron*'s second prong is not met. Thus,

No. 25-30010

the contract is maritime, and Louisiana law applies to void the indemnity provisions in the Fieldwood-United Fire MSC.

The district court's judgment is AFFIRMED.